# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **JESSIE MAE DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 3:05-cv-00995-** |
| | ) | **MHT-CSC** |
| **AMERICAN INTERNATIONAL GROUP, INC.;** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

**COME NOW** Defendants American General Financial Services of Alabama, Inc. ("American General"); Merit Life Insurance Company; and Yosemite Insurance Company (hereinafter collectively referred to as "Defendants"), by and through their undersigned counsel, appearing specially so as to preserve any and all defenses available under Rule 12 of the Federal Rules of Civil Procedure and specifically preserving the right to seek arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* As grounds for this opposition to Plaintiff's Motion to Remand, Defendants state as follows:

### I. INTRODUCTION

Plaintiff commenced the present action on September 8, 2005 by filing a complaint in the Circuit Court of Macon County, Alabama. In her Complaint, Plaintiff advances a variety of vague allegations designed to defeat Defendants' valid fraudulent joinder argument. (See Plaintiff's Complaint, ¶¶12-21). Specifically, Plaintiff asserts that Patricia Porter and Alicia Robinson (the "Non-Diverse Defendants") misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve her chances of being approved for the

1415368

loans in question.  (Plaintiff's Complaint, ¶¶12, 14).  Moreover, Plaintiff alleges that the Non-Diverse Defendants misrepresented to her that refinancing and consolidating prior debt would save her money.  (Plaintiff's Complaint, ¶13).  Based on these allegations, Plaintiff appears to assert the following individual causes of action with respect to a loan she obtained in 2002, 2003, and 2004[1]: (1) fraudulent misrepresentation and/or suppression; (2) negligent misrepresentation; (3) negligent and/or wanton hiring, training, and supervision; and (4) breach of fiduciary duties.

On or about October 17, 2005, Defendants removed the present action to this Court on federal question and diversity jurisdiction grounds under 28 U.S.C. § 1331, 1332, and 1441.  In their Notice of Removal, Defendants specifically demonstrated that the Non-Diverse Defendants have been fraudulently joined and that, accordingly, diversity jurisdiction exists under 28 U.S.C. § 1332(a).  Defendants also demonstrated that the present action necessarily involves substantial and disputed federal issues, and that, accordingly, this Court has embedded federal question jurisdiction under 28 U.S.C. § 1331.  On or about November 16, 2005, Plaintiff filed her Motion to Remand wherein she argued that the Non-Diverse Defendants were properly joined and that Defendants failed to show that the amount in controversy requirement had been satisfied.[2] Plaintiff also argued that her complaint only alleges state law causes of action and does not

---

[1] Defendants presume that Plaintiff's claims in the present action relate to loans she obtained on July 31, 2002, November 18, 2002, and March 5, 2004 as these are the only loans during the time frame referenced in Plaintiff's complaint that appear, on their face, to involve the Non-Diverse Defendants.

[2] On November 21, 2005, Defendants filed a Motion for an Extension of Time to Respond to Plaintiff's Motion to Remand for the Purpose of Conducting Remand-Related Discovery that remains pending before this Court.  Though Defendants believe that they have established that Plaintiff's Motion to Remand should be denied, they maintain their position that remand-related discovery is necessary to clarify Plaintiff's vague and evasive claims and to conclusively demonstrate that this Court should exercise federal question and diversity jurisdiction over this matter.

require resolution of substantial federal issues. As demonstrated in detail below, however, Plaintiff's contentions are unfounded, and her Motion to Remand is due to be denied.

## II. ARGUMENT

A. **This Court Has Diversity Jurisdiction Over the Present Action Because the Non-Diverse Defendants Have Been Fraudulently Joined and the Amount in Controversy Exceeds the Jurisdictional Threshold.**

Federal district courts have jurisdiction over civil actions where there is complete diversity among the parties, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Though diversity jurisdiction generally mandates that "every plaintiff . . . be diverse from every defendant," Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1355 (11th Cir. 1996), federal courts in Alabama have specifically held that "[w]hen a defendant has been fraudulently joined, the court should disregard his or her citizenship for purposes of determining whether a case is removable based upon diversity jurisdiction." Bullock v. United Benefit Ins. Co., 165 F. Supp. 2d 1255, 1256 (M.D. Ala. 2001)(citing Tapscott, 77 F.3d at 1360.).

It is clear that the Non-Diverse Defendants have been fraudulently joined in the present action. Plaintiff's claims against said Defendants are time-barred by the applicable statute of limitations and/or substantively meritless. Thus, the Non-Diverse Defendants' citizenship should be disregarded, creating complete diversity between the Plaintiff and all properly joined Defendants. In addition, Defendants have provided more than enough evidence to support their contention that the amount in controversy exceeds $75,000 in the present action. As such, both diversity jurisdiction requirements have been satisfied herein, and Plaintiff's Motion to Remand is due to be denied.

1.    **Complete Diversity Exists in the Present Action Because the Non-Diverse Defendants Have Been Fraudulently Joined.**

Complete diversity exists in the present action because the citizenship of the Non-Diverse Defendants should be disregarded due to their fraudulent joinder. See Bullock, 165 F. Supp. 2d at 1256 (citing Tapscott, 77 F.3d at 1360). Fraudulent joinder occurs where "there is no possibility that the Plaintiff can prove a cause of action against the resident (non-diverse) defendant." Fowler v. Provident Life and Accident Insurance Co., 256 F. Supp. 2d 1243, 1246 (N.D. Ala. 2003)(citing Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998)). In addition to those instances where the Plaintiff's claims substantively fail, fraudulent joinder also occurs where the only claims against a non-diverse defendant are barred by the statute of limitations, leading courts to deny motions to remand on this basis. See Owens v. Life Ins. Co. of Georgia, 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003); Fowler, 256 F.Supp.2d 1243; Bullock, 165 F. Supp. 2d 1255; Wakeland v. Brown & Williamson Tobacco Corp., 996 F. Supp. 1213 (S.D. Ala. 1998).

In Owens, the plaintiff brought an action in 2003 against an insurance company and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the insurance company, with respect to a life insurance policy purchased in 1984. Owens, 289 F.Supp.2d at 1321. In conjunction with these allegations, the plaintiff asserted claims for breach of contract, fraud, and fraudulent suppression against both defendants. Id. The defendants subsequently removed the case, arguing that complete diversity existed by virtue of the individual defendant's fraudulent joinder. Id. at 1321-23. Judge Fuller found that the plaintiff was provided with documentation in 1984 that both contradicted the alleged oral misrepresentations and provided the information allegedly suppressed. Id. at 1326. Accordingly, the Court concluded that the plaintiff "should have discovered the possibility of

fraud and misrepresentation in 1984 when he purchased the Policy, and the two year statute of limitations commenced running at that time." Id. Plaintiff's claims against the individual defendant were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing a cause of action against the individual defendant, the Court held that said defendant was, in fact, fraudulently joined and denied the plaintiff's motion to remand. Id.

In Bullock, Judge DeMent reached the same conclusion in a virtually identical case. Bullock, 165 F. Supp. 2d 1255. There, the plaintiff filed an action in 2001 against a health insurer and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the health insurer, with respect to an insurance policy purchased in 1998. Id. at 1256. In conjunction with these allegations, the plaintiff asserted various fraud claims and a breach of contract claim against both defendants. Id. The defendants subsequently removed the case, arguing that diversity jurisdiction existed by virtue of the individual defendant's fraudulent joinder. Id. Judge DeMent concluded that the plaintiff's breach of contract claim against the individual defendant failed as a matter of law because said defendant was not a party to the contract at issue. Id. Additionally, the Court also noted that the plaintiff was provided with documentation in 1998 that both contradicted the individual defendant's alleged oral misrepresentations and provided the information allegedly suppressed. Id. at 1258. Accordingly, the Court concluded that the statute of limitations for the plaintiff's fraud claims "began running in 1998 and expired no later than 2000," well before the action at issue was commenced. Id. Plaintiff's fraud claims against the individual defendants were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing fraud claims against the individual

defendant, the Court held that said defendant was fraudulently joined and denied the plaintiff's motion to remand. Id.

Finally, Judge Blackburn adopted the same line of reasoning in Fowler. 256 F.Supp.2d 1243. There, the plaintiff filed an action in 2002 against an insurer and a non-diverse individual defendant based upon alleged misrepresentations and/or omissions made by the individual defendant, as agent for the insurer, with respect to a disability insurance policy purchased in 1992. Id. at 1245. In conjunction with these allegations, the plaintiff asserted fraudulent and/or negligent misrepresentations and fraudulent suppression. Id. The defendants subsequently removed the case, arguing that diversity jurisdiction existed by virtue of the individual defendant's fraudulent joinder. Id. at 1246. Judge Blackburn found that the plaintiff was provided with documentation in 1992 that both contradicted the alleged oral misrepresentations and provided the information allegedly suppressed, Id. at 1248-49, and concluded that "the plaintiff should have discovered the possibility of fraud and misrepresentation in 1992 when she purchased the policy, and the two year statute of limitations commenced running at that time." Id. at 1249. Id. Plaintiff's fraud claims against the individual defendants were, therefore, found to be barred by the two year statute of limitations. Id. Because the statute of limitations precluded any possibility of establishing fraud claims against the individual defendant, the Court held that said defendant was fraudulently joined and denied the plaintiff's motion to remand. Id. at 1249-50.

As demonstrated in detail below, Plaintiff's claims against the Non-Diverse Defendants in the present action are time-barred and/or substantively meritless. As such, the Non-Diverse Defendants have been fraudulently joined in the present action, and Plaintiff's Motion to Remand should be denied.

      **a.**     **Plaintiff's Fraud-Based Claims Against Alicia Robinson are Time-Barred by the Applicable Two Year Statute of Limitations.**

Plaintiff's fraud-based claims against Alicia Robinson[3] are governed by a two year statute of limitations.[4] Thus, to comply with the statute of limitations, Plaintiff's fraud-based claims against Alicia Robinson must have been brought within two years of the accrual of said claims.

Alabama courts have held that the two year limitations period begins to run for fraud claims "when the plaintiff discovers the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So. 2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So. 2d 671, 676 (Ala. 1992). Fraud "is deemed to have been discovered when it ought to have been discovered; that is, **at the time of the discovery of facts that, on the part of a person of ordinary prudence, would provoke inquiry that if followed up, would lead to the discovery of the fraud.**" Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d at 168 (emphasis added). Thus, the two-year limitations period begins to run on "the date the plaintiff has actual or constructive notice of the fraud." Lott v. Tarver, 741 So. 2d at 397 (citing Ala. Code § 6-2-3 (1975)).

----

[3] Defendants' records show that Alicia Robinson was not involved with any loans obtained by Plaintiff after 2002, a showing that is corroborated by the fact that Robinson has not been employed by American General since December of 2002. (See the Affidavit of Robert S. Ritter, attached hereto as Exhibit "A."). As such, all of Plaintiff's claims against Robinson are time-barred by the applicable statute of limitations, which necessitates a finding that Robinson was fraudulently joined in the present action.

[4] Because no specific limitations period is prescribed for Plaintiff's fraud claims, they are all governed by the general, two (2) year statute of limitations period outlined in Ala. Code § 6-2-38(l). See, e.g., Ex parte American General Finance, Inc., 795 So. 2d 685, 686-87 (Ala. 2000); Lott v. Tarver, 741 So. 2d 394, 397 (Ala. 1999); Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d 307, 308 (Ala. 1997).

The law is now clear that "fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered." Ex parte American General Finance, Inc., 795 So. 2d at 689-90. Accord Liberty Nat'l Life Ins. Co. v. Parker, 703 So. 2d at 308; Foremost Ins. Co. v. Parham, 693 So. 2d 409, 422 (Ala. 1997); Jackson v. Secor Bank, 646 So. 2d 1377, 1379 (Ala. 1994); Kelly v. Connecticut Mut. Life Ins. Co., 628 So. 2d 454, 458 (Ala. 1993); Fabre v. State Farm Mut. Auto. Ins. Co., 624 So. 2d at 169. The plaintiffs' failure to read the documents he receives or signs does not alter this rule. Ex parte American General Finance, Inc., 795 So. 2d at 690-91; Harrell v. Reynolds Metals Co., 495 So. 2d 1381, 1387 (Ala. 1986). Otherwise, "contracts would not be worth the paper on which they were written." Dobbins v. Dicus Oil Co., 495 So. 2d 587, 588 (Ala. 1986).

In the present action, Plaintiff advances a variety of vague allegations with respect to loans obtained with Defendants. (See Plaintiff's Complaint, ¶¶12-21). Specifically, Plaintiff asserts that the non-diverse Defendant misrepresented that credit insurance was a "good deal" and that purchasing such insurance would improve her credit rating and her chances of being approved for the loans in question. (Plaintiff's Complaint, ¶¶12, 14). Moreover, Plaintiff alleges that the non-diverse Defendant misrepresented to her that refinancing and consolidating prior debt would save her money. (Plaintiff's Complaint, ¶13). Plaintiff, however, signed loan documents in connection with her 2002 loans involving Alicia Robinson that contain language at odds with these alleged oral statements, and triggered Plaintiff's duty of inquiry. (See Affidavit of Robert S. Ritter authenticating Plaintiff's loan documents, attached hereto as Exhibit "A;" Plaintiff's loan documents are attached to the Affidavit of Robert S. Ritter as Exhibit "A(1).").

Plaintiff's 2002 loan documents involving Alicia Robinson disclose all of the relevant financial terms for said loans, including the amount financed, finance charge, total of payments, interest rate, amount of monthly payment, and total number of payments. (See Exh. A(1)). This information should have provoked an inquiry that, if followed, would have allowed Plaintiff to determine whether refinancing prior loans and consolidating existing debt was in her financial best interests. Similarly, Plaintiff's loan documents clearly disclose the premiums for all insurance products purchased. (See id.). This information should have provoked an inquiry that, if followed, would have allowed Plaintiff to determine whether purchasing Defendants' insurance products was, in fact, a "good deal."

Regarding the optional nature of credit life and/or credit disability insurance, Plaintiff received Truth in Lending Insurance Disclosures in connection with her 2002 loans involving Alicia Robinson that state:

> **CREDIT LIFE, DISABILITY, OR INVOLUNTARY UNEMPLOYMENT INSURANCE IS NOT REQUIRED TO OBTAIN CREDIT AND WILL NOT BE PROVIDED UNLESS I SIGN AND AGREE TO PAY THE ADDITIONAL COST.** I cannot be denied credit simply because I choose not to buy credit insurance.

(See Ex. A(1)(emphasis in original)). Moreover, Plaintiff signed an Insurance Disclosure Summary in connection with her 2002 loans that states:

> **I WANT TO PURCHASE THE INSURANCE/OTHER PRODUCTS NOTE BELOW AND HAVE THE PREMIUM/ FEE ADVANCED AS PART OF MY LOAN. I FULLY UNDERSTAND THAT I DO NOT HAVE TO PURCHASE ANY OF THE FOLLOWING INSURANCE/OTHER PRODUCTS TO OBTAIN MY LOAN.**

(See id. (emphasis in original)).

Given the above, it is clear that the loans documents for Plaintiff's 2002 loans involving Alicia Robinson provided notice of any alleged misrepresentations regarding whether purchasing

credit insurance was a good deal; whether purchasing such insurance would improve her chances of getting approved for the loans in question; and whether refinancing prior loans would save her money. (See id.). Notice of these alleged misrepresentations alone should have aroused Plaintiff's suspicion and triggered a duty of inquiry regarding Alicia Robinson's alleged misrepresentation that purchasing credit insurance would improve Plaintiff's credit score. Thus, Plaintiff was on notice of all fraud claims against the Alicia Robinson at the time of her respective loan closings in 2002. Because Plaintiff had notice of her fraud claims against Alicia Robinson in 2002, those claims accrued, and the statute of limitations began to run, in 2002. Fabre v. State Farm Mut. Auto. Ins. Co., 624 So.2d 167, 168 (Ala. 1993). Accord Lott v. Tarver, 741 So.2d at 397; K & C Dev. Corp. v. AmSouth Bank, N.A., 597 So.2d 671, 676 (Ala. 1992). Plaintiff, however, did not file the present action until September 8, 2005, more than two years after her 2002 loans involving Alicia Robinson. As a result, her fraud claims against Alicia Robinson are time-barred by the applicable two year statute of limitations.

**b.    Plaintiff's Negligence-Based Claims Against Alicia Robinson are Time-Barred by the Applicable Two Year Statute of Limitations.**

Plaintiff's negligence-based claims against Alicia Robinson are similarly governed by a two year statute of limitations.[5] The law in Alabama is well settled that causes of action for negligence and wanton misconduct accrue, and the two-year statute of limitations begins to run, as soon as "the plaintiff can first maintain the action." Booker v. United American Ins. Co., 700 So. 2d at 1339. Accord Ex parte Burnham, Klinefelter, Halsey, Jones & Cater, P.C., 674 So. 2d 1287, 1289 (Ala. 1995); Cofield v. Smith, 495 So. 2d 61, 62 (Ala. 1986). A plaintiff is entitled

---

[5] Because no specific limitations period is prescribed for Plaintiff's negligence claims, they are also governed by the general, two year statute of limitations period outlined in ALA. CODE § 6-2-38(l).

to "maintain an action" when the party "suffers an injury or a loss or damage." Jones v. Blanton, 644 So. 2d 882, 887 (Ala. 1994) Thus, the statute begins to run at this initial point "regardless of whether the full amount of damage is apparent at the time of the first injury. Booker, 700 So. 2d at 1339.

In Booker, plaintiffs brought suit against an insurance company and others for negligence, wanton misconduct, fraudulent misrepresentation, and fraudulent suppression arising out of their purchase of an insurance policy after the agent "made various misrepresentations to them." 700 So. 2d at 1334. The trial court granted the defendants' motion for summary judgment on all of plaintiffs' claims. Id. The Alabama Supreme Court affirmed the trial court's judgment in its entirety. Id. at 1340. In holding that the plaintiffs' negligence and wanton misconduct claims were barred by the two-year limitations period, the Supreme Court stated as follows:

> It is well settled that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury. In Henson, 621 So. 2d at 1271, 1274, this Court held that the plaintiff's completion of an application for a health insurance policy started the running of the two-year limitations period for a negligence action. . . . In this case, as in Henson, 621 So. 2d at 1274, . . . any negligence or wantonness on the part of Stone or United American occurred, at the latest, in May 1991, when the Bookers signed the application and wrote the check for the policy. Thus, their claims accrued in May 1991. Because the Bookers filed their complaint in August 1993 --- over two years after their claims accrued — their negligence and wantonness claims are time-barred.

Id. at 1339-40.

In the present action, Plaintiff alleges that Alicia Robinson's negligence and wanton conduct resulted in, among other things, her having to pay for additional interest, insurance, and fees. (See Plaintiff's Complaint, ¶ 25). These alleged injuries were first incurred at the time of

her 2002 loan closings. As such, Plaintiff's negligence-based claims against Alicia Robinson accrued, and the statute of limitations began to run, in 2002 because it was at that time that Plaintiff would have first suffered a legal injury for which she would have been entitled to maintain a cause of action. See Booker, 700 So. 2d at 1339; Jones v. Blanton, 644 So. 2d at 887. Plaintiff, however, did not file the present action until September 8, 2005, more than two years after her 2002 loans involving Alicia Robinson. As such, her negligence-based claims against Alicia Robinson are time-barred by the applicable two year statute of limitations.

> **c.    Plaintiff's Fraudulent Misrepresentation Claims Against the Non-Diverse Defendants Fail as a Matter of Law.**

In addition to the statute of limitations bar discussed above, Plaintiff cannot possibly recover against either Patricia Porter or Alicia Robinson for fraudulent misrepresentation because said claim fails as a matter of law. The Alabama Supreme Court has held that recovery under a fraud theory necessitates a showing that the plaintiff "reasonably relied" on the alleged misrepresentations. See Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997). Under this standard, "[i]f the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts," then the plaintiff's reliance on the alleged misrepresentations was not reasonable, and "the plaintiffs should not recover." Massey Automotive, Inc. v. Norris, 895 So.2d 215, 220 (Ala. 2004) (quoting Torres v. State Farm Fire & Casualty Co., 438 So.2d 757, 759 (Ala. 1983)).

In the present action, Plaintiff alleges that the Non-Diverse Defendants fraudulently misrepresented the benefits and optional nature of credit insurance and the financial benefits of refinancing and prior debt with respect to loans obtained in 2002, 2003 and 2004. As demonstrated above, however, Plaintiff signed loan documents in connection with these loans that clearly provide all of the relevant financial terms for said loans, including the amount

financed, finance charge, total of payments, interest rate, amount of monthly payment, and total number of payments. (See Ex. A(1)). Moreover, Plaintiff's loan documents also provide the financial terms for the credit insurance at issue. (See id.). Had she exercised ordinary care, Plaintiff could have easily used this information to ascertain whether refinancing prior loans and existing debt and purchasing credit insurance was in her financial best interests. Further, Plaintiff's loan documents clearly disclose that credit insurance was not needed to obtain the loans in question. (See id.). Had Plaintiff taken the time to examine any of this information, she would have been able to inquire about and substantiate the truth, or lack thereof, of all the Non-Diverse Defendants' alleged misrepresentations. As such, her reliance on the Non-Diverse Defendants' alleged misrepresentations is unreasonable, and her claims for fraudulent misrepresentation against said Defendants fail as a matter of law.

   d.     **Plaintiff's Fraudulent Suppression Claims Against the Non-Diverse Defendants Fail as a Matter of Law.**

       In addition to the statute of limitations bar discussed above, Plaintiff's fraudulent suppression claims against the Non-Diverse Defendants also fail as a matter of law. Plaintiff presumably contends that the Non-Diverse Defendants fraudulently failed to disclose the optional nature of credit insurance and the financial consequences of refinancing prior debt. At the outset, it bears noting that such allegations are completely negated by Plaintiff's loan documents, which, as demonstrated above, put Plaintiff on notice of the information allegedly suppressed. Moreover, the Non-Diverse Defendants had no duty to disclose the information allegedly suppressed.

       Fraudulent suppression claims such as the one at hand require a showing that the defendant in question had a duty to disclose the suppressed facts. Ex parte Ford Motor Credit Co. v. Adamson Ford, Inc., 717 So.2d 781, 785-86 (Ala. 1997) (citing Lambert v. Mail Handlers

Benefit Plan, 682 So.2d 61, 63 (Ala. 1996); Gewin v. TCF Asset Mgmt. Corp., 668 So.2d 523 (Ala. 1995)).    In the absence of a special confidential relationship or other special circumstances, the general creditor-debtor relationship does not impose a fiduciary duty requiring disclosure of certain information.  Id. at 786-87 (citing Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984)).  Where parties are engaged in arms-length commercial transactions and are fully capable of protecting their own interests, "Alabama common law imposes no duty to disclose unless the information is requested."  Id. at 787 (citing Gewin, supra; Altmayer v. City of Daphne, 613 So.2d 366 (Ala. 1993); Bama Budweiser of Montgomery, Inc. v. Anheuser Busch, Inc., 611 So.2d 238 (Ala. 1992)).

In fact, the Alabama Court of Appeals has addressed allegations similar to those advanced by Plaintiff and determined that a finance company could not be held liable for suppression.  In Williams v. Norwest Financial Alabama, Inc., 723 So. 2d 97 (Ala. Civ. App. 1998), the plaintiff contended that defendant Norwest Financial Alabama, Inc. ("Norwest") committed fraud by failing to disclose to the plaintiff that financing alternatives existed which were less expensive than the complete refinancing of plaintiff's loans.  The plaintiff argued that the finance company required its customers to refinance existing loans rather than allowing them to obtain new and separate loans.  Id. at 104.  The trial court, however, concluded that those claims were not actionable under Alabama law, and, therefore, entered summary judgment in favor of the defendant.  On appeal, the Alabama Court of Civil Appeals affirmed.

First, the Court held that "nothing prohibits the refinancing or consolidation of an existing loan with a subsequent loan."  Id.  Second, the Court determined that Norwest had no duty to disclose the effects of an alternative to the refinancing of plaintiff's existing loan. Specifically, the Court stated that:

14

> [N]o evidence exists that would give rise to a confidential relationship between the parties. [Plaintiff] had previously dealt with Norwest on a number of occasions; however, <u>prior business contact alone does not give rise to a confidential relationship</u>. (citation omitted). <u>Nothing in the record indicates that the transaction complained of was anything other than an arm's length transaction between the parties.</u> Accordingly, we conclude that the summary judgment was properly entered in favor of Norwest on this count.

Id. (emphasis added). Accord, Mitchell v. Industrial Credit Corp., 898 F. Supp. 1518, 1535 (N.D. Ala. 1995) (applying Alabama law and holding that a finance company did not have a duty to disclose to plaintiff that it "would profit from the sale of [credit] insurance or that [credit insurance] might be available elsewhere at a lower price."). In this matter, as in Williams, there is absolutely no evidence of a "special relationship" between the parties. Thus, the Non-Diverse Defendants had no duty to disclose the information allegedly suppressed, and Plaintiff's claims to the contrary fail as a matter of law.

### c.    Plaintiff's Breach of Fiduciary Duties Claims Against the Non-Diverse Defendants Fail as a Matter of Law.

In addition to the statute of limitations bar discussed above, Plaintiff cannot possibly assert a cause of action for breach of fiduciary duties against the Non-Diverse Defendants because no such duty existed between them. As demonstrated above, it is well settled that, in the absence of a special confidential relationship or other special circumstances, the general creditor-debtor relationship does not impose fiduciary duties on the creditor. Ex parte Ford Motor Credit Co. v. Adamson Ford, Inc., 717 So.2d 781, 786-87 (Ala. 1997)(citing Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); Baylor v. Jordan, 445 So.2d 254 (Ala. 1984)). With that said, there is absolutely no evidence that Plaintiff and the Non-Diverse Defendants enjoyed a special confidential relationship, the likes of which would impose fiduciary duties on the latter. As such, Plaintiff's breach of fiduciary duties claims against the Non-Diverse Defendants fail as a matter of law.

**f.    Plaintiff's Negligent and/or Wanton Hiring, Training, and Supervising Claims Against the Non-Diverse Defendants Fail as a Matter of Law.**

In addition to the statute of limitations bar discussed above, Plaintiff's negligent and/or wanton hiring, training, and supervising claims against the Non-Diverse Defendants fail as a matter of law. It is axiomatic that such claims can only be asserted against an <u>employer</u> in connection with the alleged misconduct of an employee. <u>See</u> <u>Bridges v. Principal Life Ins. Co.,</u> 141 F.Supp.2d 1337, 1340 n. 3 (M.D. Ala. 2001)(noting that claims of negligent supervision must necessarily be brought against the insurer and not against the insurer's agent). In the present action, however, the Non-Diverse Defendants were both individual employees of the corporate Defendants. As such, Plaintiff cannot possibly prevail on a claim for negligent and/or wanton hiring, training, and supervising against the Non-Diverse Defendants.

**g.    Plaintiff's Counsel Has Manipulated the Complaints in this and other Similar Matters In a Transparent Effort to Defeat Removal of the Cases.**

It bears noting that Plaintiff's counsel has manipulated the complaints in this and other similar matters in a transparent attempt to defeat removal of these cases. As demonstrated in Defendants' Motion for an Extension of Time, Plaintiff's counsel has filed numerous lawsuits against Defendants in Mississippi, Tennessee, and Alabama.[6] Though these lawsuits all involve loans from the same general time period, the Mississippi cases were filed a couple of years prior to the Alabama and Tennessee matters. In the Mississippi cases, Plaintiff's counsel filed complaints alleging that the plaintiffs were told they had to purchase credit insurance in order to

---

[6] The complete list of the lawsuits filed by Plaintiff's counsel against Defendants in Mississippi, Tennessee, and Alabama is too voluminous to include in this Memorandum. As a result, Defendants have set forth the list in a separate document, attached hereto as Exhibit "B."

obtain their loans.[7] Several federal courts in Mississippi have since denied motions to remand

and are now granting motions for summary judgment in those cases because the plaintiffs' loan

documents directly contradict this alleged misrepresentation.[8]

As a result, Plaintiff's counsel has changed the complaints it has filed in Alabama and

Tennessee to allege that the plaintiffs were told that purchasing credit insurance would improve

---

[7] As an example of the complaints filed in Mississippi, submitted herewith as Exhibit "C" is a true and correct copy of the complaint filed in the lawsuit styled Edward Morgan, et al. v. American International Group, Inc., In the Chancery Court of Jones County, Mississippi, Second Judicial District, Laurel Division, Civil Action Number: 2002-1029.

[8] The consumer finance lawsuits in Mississippi in which federal courts have denied remand, and in some of which the courts have already granted summary judgment for the defendants, include:  Boone v. Citigroup, Inc., __ F.3d __, 2005 WL 1581091 (5th Cir. July 7, 2005); Ross v. Citifinancial, Inc., 344 F.3d 458 (5th Cir. 2003), r'hng en banc denied, Jan. 25, 2005 (nos. 02-60608 & 02-60609); Clark v. Commercial Credit Corp., __ F. Supp. 2d __, 2005 WL 428476 at *3 (S.D. Miss. Feb. 7, 2005); Lee Frye, et al. v. American General Finance, Inc., et al.; In the United States District Court; Southern District of Mississippi; Western Division; No. 5:02cv122BrS (S.D. Miss. Feb. 9, 2004); Queen v. American General Finance, Inc., 289 F. Supp. 2d 782 (S.D. Miss. 2003); Lott v. First Family Financial Servs., Inc., No. 2:02cv56PG (S.D. Miss July 11, 2003); Green v. American General Finance, Inc., 2003 WL 1191183 (S.D. Miss. March 7, 2003); Stacher v. American General Finance, Inc., 2003 WL 1191182 (S.D. Miss. March 7, 2003); Barnes v. First Franklin Finance Corp., No. 3:02cv1259LN (S.D. Miss. Mar. 31, 2003); Brown v. Citigroup, No. 2:02cv112PG (S.D. Miss. Mar. 21, 2003); Anderson v. First Family Financial Servs., Inc., No. 4:02cv55PB (N.D. Miss. Mar. 6, 2003); Bolden v. Kentucky Finance Co., No. 4:02cv98LN (S.D. Miss. Feb. 28, 2003); Walker v. City Finance Co., 2003 WL 554613 (N.D. Miss. Feb. 12, 2003); Benson v. City Finance Co., No. 1:02cv242DD, slip op. at 6 (N.D. Miss. Feb. 12, 2003); Conner v. First Family Financial Services, Inc., 2002 WL 31056778 (N.D. Miss. Aug. 28, 2002); Ross v. First Family Financial Services, Inc., 2002 WL 31059582, (N.D. Miss. Aug. 29, 2002); Strong v. First Family Fin. Services, Inc., 202 F. Supp. 2d 536 (S.D. Miss. 2002); Henley v. Pioneer Credit Co.,  2002 WL 1013110 (N.D. Miss. Apr. 10, 2002); Harrison v. Commercial Credit Corp., 2002 WL 548281 (S.D. Miss. Mar. 29, 2002); Ellis v. Washington Mutual Finance Group, No. 4:01cv144-L-N (S.D. Miss. May 8, 2002); Cooley v. Washington Mutual Finance Group, 2002 WL 1768897 (S.D. Miss. July 29, 2002); Howard v. CitiFinancial, Inc., 195 F. Supp. 2d 811 (S.D. Miss. 2002); Ross v. CitiFinancial, Inc., 2002 WL 461567 (S.D. Miss. Mar. 18, 2002); Johnson v. CitiFinancial, Inc.; 5:01cv215BN (S.D. Miss. Mar. 8, 2002); Crockett v. CitiFinancial, Inc., 4:01cv172-MD (N.D. Miss. Feb. 28, 2002); and Carter v. Union Sec. Life Ins. Co., 148 F. Supp. 2d 734 (S.D. Miss. 2001).

their credit score and their chances of being approved for the loans in question.[9]  Thus, even though the loans were from the same time period, Plaintiffs' counsel has abandoned those allegations and conjured up new allegations in an effort to avoid summary judgment.  In fact, Plaintiff's counsel has even gone so far as to amend the few Mississippi lawsuits in which summary judgment has not yet been entered, eliminating the original allegation and replacing it with the newly crafted allegation.[10]

Set forth below is a comparison of the original allegation and the new allegation in the Mississippi matters, which illustrate the attempt by plaintiffs' counsel to alter their pleadings in the hopes of salvaging these meritless lawsuits:

---

[9] As an example of the complaints filed in Tennessee, submitted herewith as Exhibit "D" is a true and correct copy of the complaint filed in the lawsuit styled Beauty Robertson v. American International Group Inc. aka AIG Insurance, et al., In the Circuit Court of Shelby County, Tennessee; CT-4105-05).

[10] The Mississippi lawsuits that Plaintiff's counsel has amended in an attempt to avoid a finding of fraudulent joinder include: Brad Gatlin, et al. v. American International Group, Inc., et al., In the Chancery Court of Jones County, Mississippi, Laurel Division, Civil Action Number: CV-2002-1026; Edward Morgan, et al. v. American International Group, Inc., et al., In the Chancery Court of Jones County, Mississippi, Laurel Division, Civil Action Number:  CV-2002-1029; Dorothy Corbin, et al. v. American General Financial Services, Inc., et al, In the Circuit Court of Washington County, Mississippi, Civil Action Number:  CI2004-216; Stonewall v. American General Finance, Inc., et al., In the Circuit Court of Carroll County, Mississippi, Second Judicial District, Civil Action Number:  2004-0011CV2L; Freddie Graham, et al. v. American International Group, Inc., et al., In the Circuit Court of Bolivar County, Mississippi, First Judicial District, Civil Action Number:  2002-333; Alice Brown, et al. v. American International Group, Inc., et al., In the Circuit Court of Leflore County, Mississippi, Civil Action Number: 2002-0173-CICI; Doris Beaman, et al. v. American International Group, Inc., et al., In the Circuit Court of Sunflower County, Mississippi, Civil Action Number:  2002-0638-CI; Beatrice Jackson, et al. v. American International Group, Inc., et al., In the Circuit Court of Sunflower County, Mississippi; Civil Action Number:  2002-0640-CI.

As an example of the amended complaints filed in Mississippi, submitted herewith as Exhibit "E" is a true and correct copy of the amended complaint filed in the lawsuit styled Edward Morgan, et al. v. American International Group, Inc., In the Chancery Court of Jones County, Mississippi, Second Judicial District, Laurel Division, Civil Action Number: 2002-1029.

| Original Allegation | New Allegation |
| --- | --- |
| Contrary to law, Defendants required credit life insurance, credit disability, personal property insurance and/or other insurance in connection with their loans to Plaintiffs. These insurance products were represented by Defendants as a necessary part of the loan package, with all or some of these insurance products misrepresented by Defendants as a necessary prerequisite for the extension of the credit and receipt of the loan. (Ex. C, ¶ 10). | Contrary to law, Defendants fraudulently represented to Plaintiffs that if they purchased the credit life, credit disability and/or personal property insurance then they stood a better chance of getting approved for the loan requested. (Ex. E, ¶ 18). |

The sole purpose of these newly concocted allegations is an attempt to defeat the finding that plaintiffs' loan documents provided notice of their fraud claims at the time of the loan in question and triggered the statute of limitations, as well as rendering unreasonable the Plaintiff's alleged reliance on the alleged misrepresentations. Thus, it is evident that Plaintiff's counsel has manipulated its pleadings, without any basis for doing so, to suit its needs -- a practice that will only be encouraged by remanding the present action.

> **2.    Defendants Have Provided Sufficient Evidence to Support Their Contention that the Amount in Controversy Requirement is Satisfied in the Present Action.**

The amount in controversy in the present action exceeds $75,000 notwithstanding Plaintiff's refusal to specify damages. In her complaint, Plaintiff alleges that she has suffered monetary damages, that she "has suffered mental anguish and emotional distress," and that she "has otherwise been injured and damaged." (Plaintiff's Complaint, ¶ 25). Based on these alleged injuries, Plaintiff seeks a "judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus costs." (Id.)

Because Plaintiff seeks an unspecified amount of damages, Defendants are only required to show that "the amount in controversy more likely than not exceeds the jurisdictional

requirement." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996).

Defendants clearly satisfied this requirement in their Notice of Removal by citing an abundance

of Alabama decisions involving similar claims wherein the Plaintiff was awarded damages in

excess of $75,000.[11]   Federal courts in Alabama adjudicating similar claims have repeatedly

---

[11]   See e.g. Jeter v. Orkin Exterminating Co., supra, ($2,000,000 punitive damages awarded in fraud and breach of contract matter); Johns v. A.T. Stephens Enterprises, Inc., 815 So. 2d 511 (Ala. 2001) ($150,000 punitive damage award in conspiracy to convert matter); Travelers Indemnity Co. of Illinois & Crawford & Co. v. Griner, 809 So. 2d 808 (Ala. 2001) ($200,000 punitive damage award in fraud and outrage matter); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) ($100,000 punitive damage award in conversion and trespass matter); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) ($225,000 award of punitive damages in fraud and breach of contract matter); Cooper & Co. v. Lester, 832 So. 2d 628 (Ala. 2000) (punitive damage awards ranging from $178,538 to $250,000 in fraud action); Prudential Ballard Realty Co., Inc. v. Weatherly, supra, (award of $750,000 of punitive damages in fraud action); Oliver v. Town, 770 So. 2d 1059 (Ala. 2000) ($249,000 award of punitive damages in conversion action); Chrysler Corp. v. Schiffer, 736 So. 2d 538 (Ala. 1999) ($150,000 award of punitive damages in fraud and breach of contract matter); Life Insurance Company of Georgia v. Parker, supra, ($150,000 award of punitive damages in insurance fraud matter); Patel v. Patel, 708 So. 2d 159 (Ala. 1998) ($225,000 award of punitive damages in fraud and breach of contract matter); Talent Tree Personnel Srvs., Inc. v. Fleenor, 708 So. 2d 917 (Ala. 1997) ($1,500,000 award of punitive damages in fraud and breach of contract matter); American Pioneer Life v. Williamson, 704 So. 2d 1361 (Ala. 1997) ($750,000 award of punitive damages in fraud and breach of contract case); Union Sec. Life Ins. Co. v. Crocker, 709 So. 2d 1118 (Ala. 1997) ($1,000,000 award of punitive damages in insurance fraud matter); Life Ins. Co. of Georgia v. Johnson, supra, ($3,000,000 award of punitive damages in insurance fraud action); Hillcrest Center, Inc. v. Rone, 711 So. 2d 901 (Ala. 1997) ($94,000 award of punitive damages in fraudulent inducement action); First Commercial Bank v. Spivey, 694 So. 2d 1316 (Ala. 1997) ($500,000 award of punitive damages in fraud and breach of contract matter); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $33,000,000 in punitive damages); Ford Motor Co. v. Sperau, 708 So. 2d 111 (Ala. 1997) ($1,792,000 in punitive damages); Johnson v. Mercury Finance Co., CV-93-52, in the Circuit Court of Barbour County, Alabama, Clayton Division (plaintiff, buyer of used cars, alleged that defendant fraudulently failed to disclose a $1,000 discount for which defendant purchased the non-recourse note; jury awarded $90,000 in compensatory damages, and $50,000,000 in punitive damages, the award of punitive damages was remitted to $2,000,000.); Key v. Prudential Insurance Co., et al., CV-93-479, in the Circuit Court of Marshall County, Alabama (August 28, 1995) (the plaintiff alleged that the insurance agent misrepresented that no additional premium payments would be required; jury awarded $25,000,000 in punitive damages.); Parham v. Foremost Insurance Co., 693 So. 2d 409 (Ala. 1997) (jury awarded $6,000 in compensatory damages, and $7,500,000 in punitive damages; the punitive damages were later

acknowledged that the citation of analogous cases suffices to show that the amount in controversy more likely than not exceeds the jurisdictional requirement. See Owens, 289 F. Supp. 2d 1319 (after careful review of the cases cited by the defendant, the Court concluded that said defendant had sufficiently demonstrated that the amount in controversy requirement had been met.); Fowler, 256 F.Supp.2d at 1249 (same); Bullock, 165 F. Supp. 2d at 1259 (same).

Relying on cases such as Bennett v. American Medical Security, Civil Action No. 02-D-120-N (M.D. Ala. Feb. 8, 2002) and Fabritis v. United Wisconsin Life Insurance Co., Civil Action No. 02-T-820-N (M.D. Nov. 1, 2002), Plaintiff contends that Defendants failed to

remitted to $175,000.). Consequently, the amount in controversy requirement has been established.

See e.g. New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2001) (awarding $100,000 in compensatory damages, the majority of which for mental anguish, in conversion action); Prudential Ballard Realty Co., Inc. v. Weatherly, 792 So. 2d 1045 (Ala. 2000) ($250,000 compensatory damage award, mostly attributable to mental anguish, in fraud matter); Jeter v. Orkin Exterminating Company, Inc., 832 So. 2d 25 (Ala. 2001) ($300,000 mental anguish awarded in fraud and breach of contract matter); Oliver v. Towns, 770 So. 2d 1059 (Ala. 2000) ($67,800 metal anguish award); New Plan Realty Trust v. Morgan, 792 So. 2d 351 (Ala. 2000) (in a conversion claim, more than half of the $100,000 award of compensatory damages was attributed to mental anguish); Sparks v. Cash America International, Inc., 789 So. 2d 231 (Ala. 2000) (in fraud and breach of contract claim, $50,000 of the $75,000.00 compensatory damage award was attributed to mental anguish); Liberty National Life Ins. Co. v. Caddell, 701 So. 2d 1132 (Ala. 1997) (awarding $50,000 in compensatory damages for mental anguish resulting from alleged conversion); Hare v. Mutual Savings Life, CV-94-529, 1997 WL 743899 (LPR JURY) (awarding $500,000 in compensatory damages for alleged insurance fraud where primary injury was emotional distress); Mallard v. Countrywide Funding Corp., CV-95-199, 1997 WL 743898 (LRP JURY) (awarding $1,000,000 in compensatory damages to two Plaintiffs for emotional distress caused by fraud); Ball v. ALFA Realty, Inc., CV-95-103, 1997 WL 850611 (LRP JURY) (awarding $100,000 in compensatory damages for emotional distress suffered as a result of fraud); Norwood v. Glen Lanes Realty Co., CV-96-391, 1997 WL 996325 (LRP JURY) (awarding $200,000 in compensatory damages for emotional distress resulting from fraud); Gallant v. Prudential Ins. Co. of America, CV-93-50, 1994 WL 180709 (LRP JURY) (awarding $430,000 in compensatory damages for alleged insurance fraud); Sperau v. Ford Motor Co., CV-91-34, 1994 WL 180700 (LRP JURY) (awarding $4,492,000 in compensatory damages to four Plaintiffs for emotional distress allegedly caused by fraud). Consequently, the amount in controversy requirement is easily satisfied in the case at hand.

establish that the amount in controversy requirement has been met. However, the only evidence that the Bennett defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was a blanket assertion in a footnote that she had satisfied her heavy burden. Bennett, No. 02-D-120-N, at *2. Similarly, the only evidence that the Fabritis defendants used to show that the damages in the case were likely to exceed the $75,000 requirement was the unsupported assertion in their removal notice that Jury awards in cases on the same type of suits routinely exceed $75,000. Fabritis, Civil Action No. 02-T-820-N, at *4. By contrast, Defendants here have provided the Court with ample support for the proposition that the amount in controversy requirement has been met. See Owens, 289 F. Supp. 2d 1319; Fowler, 256 F.Supp.2d at 1249; Bullock, 165 F. Supp. 2d at 1259. As such, this Court should find that the amount in controversy requirement is satisfied in the present action.

**B.    This Court Has Embedded Federal Question Jurisdiction Over the Present Action Under the Supreme Court's Recent Decision in *Grable*.**

With its recent decision in Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, --- U.S. ----, 125 S.Ct. 2363 (2005), the United States Supreme Court reaffirmed the validity of embedded federal question jurisdiction under 28 U.S.C. § 1331 and expanded its reach beyond previously established boundaries. Thus, the pre-Grable decisions cited by Plaintiff in her Motion to Remand are largely inconsequential and may only be considered, if at all, in the context of the Court' new, more expansive interpretation of embedded federal question jurisdiction.

Grable established a three-prong test for determining the existence of federal question jurisdiction in those instances where state-law claims implicate significant federal issues. First, the federal issue must "actually be in dispute." Id. at 2369 n.3. Second, the federal issue must be "a substantial one." Id. at 2367. Third, the federal jurisdiction must be "consistent with

congressional judgment about the sound division of labor between state and federal courts." Id. As demonstrated in detail below, each of these prongs is satisfied herein, and this court has embedded federal question jurisdiction over the present action.

### 1.    The Present Action Involves Disputed Federal Issues.

In her Complaint, Plaintiff alleges that Defendants misrepresented and/or suppressed certain information regarding the financial benefits and optional nature of purchasing credit insurance and refinancing prior debt. (See Plaintiff's Complaint, ¶¶12-21). Though she does not explicitly plead federal causes of action *denominated as such*, Plaintiff's allegations and the lending practices invoked thereby are extensively regulated by federal law, including: the federal Truth in Lending Act, 15 U.S.C. § 1601, *et. seq.*; Regulation Z, promulgated thereunder; 12 CFR § 226.1, *et. seq.*; and 12 CFR § 590.101, promulgated thereunder. Accordingly, Plaintiff's right to recover under her putative state law claims turns, in many instances, on whether Defendants complied with this federal regulatory scheme.

For instance, Plaintiff has asserted negligence-based claims in the present action. These claims require Plaintiff to prove (1) a duty or standard of care; (2) breach of that duty or standard; (3) proximate cause; and (4) damages. Plaintiff cannot, however, prove a duty of care or breach of that duty unless she establishes a violation of TILA and Regulation Z with respect to her disclosure-related claims. See Drawhorn v. Qwest Communications Int'l, Inc., 121 F.Supp.2d 554, 562 (E.D. Tex. 2000) (since an interpretation of federal law is necessary to assess the parties' rights and the validity of the plaintiffs' cause of action, removal is proper). Thus, the validity of, at the very least, Plaintiff's negligence claims likely turns on Defendants' compliance with federal law.

The issue of Defendants' compliance with TILA and Regulation Z is sure to be disputed throughout the present action. Defendants contend that the loan documents provided Plaintiff

and the disclosures contained therein satisfy all of the requirements set forth in TILA and Regulation Z. Specifically, the loan documents make the following disclosures in accordance with Regulation Z: the annual percentage rate (See 12 C.F.R. § 226.18(e)); the amount financed as well as the finance charge (See 12 C.F.R. § 226.18(b)-(d)); and the total of payment, the amount of monthly payments, and the total number of payments. (See 12 C.F.R. § 226.18(g)-(h)). Furthermore, the loan documents at issue comply with TILA, which states that in those instances where the cost of credit related insurance is not included in the finance charge -- which it was not in the loans at issue -- then the lender must disclose that "insurance coverage is not required by the creditor...[,]" 12 C.F.R. § 226.4(d)(1)(i), which Defendants did disclose in the loans at issue.

Given the above, the first prong of Grable's embedded federal question analysis is clearly satisfied in the present action.

**2.    The Disputed Federal Issues in Question are Substantial.**

The Grable Court held that federal issues are substantial where there is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 2367. One such advantage offered by a federal forum is the "hope of uniformity." Id. In those fields that are heavily regulated by federal law, such as the consumer lending industry, uniformity in the application of a detailed regulatory scheme is, in and of itself, a substantial federal interest that warrants the imposition of federal jurisdiction. In fact, the Fourth Circuit has specifically held that "[w]here the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the

exercise of jurisdiction by federal courts." <u>Ormet Corp. v. Ohio Power Co.</u>, 98 F.3d 799, 807 (4th Cir. 1996) (citations omitted).[12]

A state court's resolution of the federal issues in the present action could facilitate conflicting interpretations of TILA and Regulation Z and, in turn, undermine the stability of this statutory regime. Therefore, there is a serious federal interest herein in claiming the advantage of uniformity inherent in a federal forum. As such, the disputed federal issues herein are substantial, and the second prong of <u>Grable's</u> embedded federal question analysis is satisfied in the present action.

3. **Exercising Federal Jurisdiction in the Present Action Will Not Conflict With the Sound Division of Labor Between State and Federal Courts.**

Lastly, <u>Grable</u> states that, in determining whether embedded federal question jurisdiction exists, a Court must consider whether its exercise of federal jurisdiction will conflict with the sound division of labor between state and federal court. <u>Id.</u> at 2367. <u>Grable</u> highlights three factors that may be relevant to this "sound division of labor" standard. The first consideration is whether there is a private right of action under the federal statute at issue. <u>See id.</u> at 2369-70. Here, TILA undoubtedly provides a private right of action. <u>See</u> 15 U.S.C. § 1640(a), (e) ("[A]ny creditor who fails to comply with with any requirement imposed under this part … with respect to any perosn is liable to such person…." and the cause of action "may be brought in any United States district court…"). The second consideration concerns the preemptive effect of the federal statute at issue. <u>See id.</u> at 1270. This factor also weighs in favor of federal jurisdiction as TILA preempts all state regulations to the extent that they conflict with its provisions. <u>See</u> 15 U.S.C. §

---

[12] In resolving the circuit split regarding whether <u>Merrell Dow Pharmaceuticals Inc. v. Thompson</u>, 478 U.S. 804 (1986), always requires a federal cause of action as a condition for exercising federal question jurisdiction, the <u>Grable</u> Court sided with, and thus implicitly endorsed, <u>Ormet</u>. <u>See</u> <u>Grable</u>, 125 S.Ct. at 2366 n.2.

1610.    The third and final consideration is whether exercising federal jurisdiction would "materially affect, or threaten to affect, the normal currents of litigation." Id. at 1271. Federal courts already routinely hear numerous TILA-related cases.    As such, exercising federal jurisdiction in this and other similar cases should not overwhelm the federal judiciary.    This is especially true in light of the fact that, as demonstrated above, Mississippi Courts have routinely denied motions to remand in virtually identical cases and are now in the process of either granting summary judgment for the defendants, or dismissing with prejudice the plaintiffs' claims for failure to prosecute these meritless claims.

Given the above, the third and final prong of the Grable standard is clearly satisfied in the present action.    As such, this Court should exercise its embedded federal question jurisdiction and deny Plaintiff's Motion to Remand.

## III. CONCLUSION

Based upon the foregoing, this Court has diversity and embedded federal question jurisdiction over the present action, and Plaintiff's Motion to Remand is due to be denied.

Respectfully submitted,

/s/ David A. Elliott
Robert H. Rutherford (RUT002)
David A. Elliott (ELL027)
Matthew T. Mitchell (MIT050)

Attorneys for Defendants

**OF COUNSEL:**

**BURR & FORMAN LLP**
3100 SouthTrust Tower
420 North 20th Street
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

    I hereby certify that on December 5, 2005, I electronically filed the foregoing Opposition to Plaintiff's Motion to Remand with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: Jere L. Beasley, Thomas J. Methvin, C. Lance Gould, Thomas Julian Butler, Matthew T. Mitchell, Robert H. Rutherford, Jeffrey M. Grantham, and John Thomas Aquina Malatesta.


                        /s/ David A. Elliott
                        OF COUNSEL