IN THE CIRCUIT COURT OF LEE COUNTY, ALABAMA

| | |
|---|---|
| AMERICAN GENERAL FINANCE, INC., | * |
| | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *    Case No. CV-04-380 |
| | * |
| CALVIN QUARLES, JR. and | * |
| ELSIE QUARLES, | * |
| | * |
| Defendants. | * |
| | * |
| CALVIN QUARLES, JR. and | * |
| ELSIE QUARLES, | * |
| | * |
| Counter-Plaintiffs, | * |
| | * |
| vs. | * |
| | * |
| AMERICAN GENERAL FINANCE, | * |
| INC.; AMERICAN INTERNATIONAL | * |
| GROUP, INC.; AMERICAN GENERAL | * |
| CORPORATION; MERIT LIFE | * |
| INSURANCE; YOSEMITE | * |
| INSURANCE COMPANY, et al. | * |
| | * |
| Counter-Defendants. | * |

## ORDER

A Pre-Trial Conference was held in this cause on December 14, 2005. The Plaintiff, American General Finance, Inc. (herein after referred to as AMERICAN GENERAL), and Counter-Defendants, American General Finance, Inc., American International Group, Inc.; American General Corporation; and, Yosemite Insurance Company, et al. (herein after referred to as "AGF, et al."), were represented by their attorney of record, David Elliott, and the Defendants/Counter-Plaintiffs, Calvin Quarles, Jr. and Elsie Quarles (herein after referred to as the "QUARLES"), were represented by their attorney of record, C. Lance Gould. At this conference the Attorneys for the parties

1



presented arguments pertaining to the Plaintiff/Counter-Defendants' Motion for Summary Judgment filed on July 12, 2005.

## I. – CASE HISTORY

Prior to the bringing of the original Complaint in this action the QUARLES had obtained a number of loans from various financial institution including: Cook Finance Company;[1] Wells Fargo; Georgia Smith;[2] Barnett Bank; Dodge-Chrysler Credit; Mann Finance;[3] TransAmerica;[4] Direct Finance;[5] and, Bank of America.[6]  Further, the QUARLES had a checking and a savings account with CB&T[7] along with credit cards from Sears; Nations Bank; Discover Card;[8] and, Citibank.[9]

In 1996 the QUARLES received their first loan from AMERICAN GENERAL.[10] This loan is not a part of the present action.[11]

The three loans involved herein were obtained by the QUARLES from AMERICAN GENERAL and were made on July 22, 1997,[12] October 13, 2000[13] and January 10, 2003.[14]  The QUARLES took out the loans from AMERICAN GENERAL for the purpose of consolidating their existing debts and thereby lowering their monthly payments.[15]  In the 1997 and 2000 loans the QUARLES gave a security interest in their

---

[1] Entered into by Mr. Quarles in his name only, Mrs. Quarles did not sign this loan, (Deposition of Calvin Quarles at p. 13).

[2] Id.

[3] Depositions of Elsie Quarles at pp. 29-30, 53-57 and Calvin Quarles, Jr. at pp. 12-13.

[4] Exhibit "D" to "Defendants/Counter-Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment."

[5] Exhibit "E" to "Defendants/Counter-Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment."

[6] Exhibit "F" to "Defendants/Counter-Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment."

[7] Deposition of Elsie Quarles at pp. 34-35.

[8] Exhibit "F" to "Defendants/Counter-Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment."

[9] Id. at pp. 54-55.

[10] Depositions of Elsie Quarrels, *supra*, at pp. 38-39 and Calvin Quarles, Jr., *supra*, at p. 16.

[11] Id.

[12] Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment.

[13] Id. Exhibit "E"

[14] Id. Exhibit "F"

[15] Depositions of Elsie Quarrels, *supra*, at pp. 42-44, 65-19, 76 and Calvin Quarles, Jr., *supra*, at pp. 17, 29-30.

real estate located at 111 Lee Road 587, Smiths, Alabama 36877[16] and the 2003 loan was a "home equity loan"[17] on the same parcel of real estate.[18]

The October 13, 2000 loan made by the QUARLES with AMERICAN GENERAL consolidated their existing debt from the loan that they took out on July 22, 1997 as well as consolidating, and paying off, their other existing debts.[19]

The QUARLES next took out a loan with AMERICAN GENERAL on January 10, 2003. When they made application for this loan the QUARLES asked that their 2000 loan be paid-off with a portion of the proceeds of this new loan. TILLERY, informed the QUARLES that his boss would not let them refinance the 2000 loan, so that they (the QUARALS) would only have to make 1 payment, and therefore they had to take out "another loan."[20] They were told that they would have 2 loans outstanding with AMERICAN GENERAL, with 2 monthly payments. The QUARLES agreed to this and stated that they understood that they would have 2 loan payments to make,[21] 1 on the 2000 loan and 1 on the 2003 loan.

At some point, following the 2003 loan made by the QUARLES with AMERICAN GENERAL, the QUARLES received a copy of their 2000 loan marked "Paid" and dated "JAN 00 2003".[22] At the time that the QUARLES received the 2000 loan documents marked "Paid" they had made all required payments on this loan and their payments were "current".[23] When the QUARLES received the 2000 loan documents marked "Paid" they sought legal advice and stopped making payments on this loan.[24]

A Complaint was filed on May 28, 2004 by the Plaintiff, American General Finance, Inc. (AMERICAN GENERAL), as a finance company, against the Defendants,

---

[16] Exhibits "D" and "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment, *supra* at pp. 4-5. The 1997 mortgage has been "cancelled" [satisfied], Deposition of TILLERY, at pp. 114, 117 and the 2000 mortgage is still "open" at p. 117.

[17] Exhibit "F" to Plaintiff/Counter-Defendant's Motion for Summary Judgment, *supra* at pp. 1-15. Deposition of TILLERY, the 2000 mortgage is still "open" at p. 117.

[18] Deposition of Elsie Quarles at p. 76.

[19] Deposition of TILLERY at p. 97 and Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment, *supra*.

[20] Deposition of Calvin Quarles at p. 22

[21] Deposition of Elsie Quarles at p. 82.

[22] Exhibit "E" to "Defendants/Counter-Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment".

[23] Deposition of TILLERY at pp. 105, 125.

[24] "Defendants/Counter-Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment" at p. 10, and "Brief in Support of Plaintiff/Counter-Defendants' Motion for Summary Judgment" at p. 12.

Calvin Quarles, Jr. and Elsie Quarles (QUARLES), alleging a default by the QUARLES on the real estate loan made by AMERICAN GENERAL to the QUARLES on October 13, 2000. In their Complaint AMERICAN GENERAL asks for: A Declaratory Judgment to determine the rights, duties, title, interest and liabilities of the parties with regard to the real property at issue in this cause; a judicial foreclosure and possession of the real property at issue; and, a deficiency balance for the sum of $50,152.90, plus interest and attorney fees.

On September 15, 2004 the Defendants/Counter-Plaintiffs, the QUARLES, filed a counter claim naming American General Finance. Inc.; American International Group, Inc.; American General Corporation; Merit Life Insurance; and, Yosemite Insurance Company, et al. as Counter-Defendants, (AGF, et al.), claiming that the Counter-Defendants are guilty of fraud, negligence, wantonness, unjust enrichment, flipping, unconscionable practices, and other claims, allegations and contentions.

The QUARLES filed an Answer to the original Complaint and AGF, et al. has filed their Answer to the QUARLES' Counter-Complaint.

The parties have conducted discovery which included the taking of depositions from the QUARLES and from Robert Mark Tillery[25] (herein after referred to as "TILLERY").

On July 12, 2005 AMERICAN GENERAL, as Plaintiff in the Original Complaint and AGF, et al., as Counter-Defendants in the QUARLES Counter-Complaint, filed a Motion for Summary Judgment wherein AMERICAN GENERAL and AGF, et al. asked the Court to enter an Order granting Summary Judgment in their favor and against the Defendants/Counter-Plaintiffs, the QUARLES, as to all claims and counterclaims asserted in the original Complaint and in the QUARLES' Counter-Complaint.

## II. STANDARD OF REVIEW

This Court has considered all of the filings, exhibits, evidence, and arguments of counsel as required by Rule 56, *Alabama Rules of Civil Procedure*, and in *Newman* v. *Town of Falkville*, 652 So.2d 757, Supreme Court of Alabama, (1994). The Court has

---

[25] TILLERY is the branch manager of the Macon Road, Columbus, Georgia office of American General Finance of Georgia. He was also the employee of AMERICAN GENERAL who "closed", or assisted with the closing, of the loans made by the QUARLES with AMERICAN GENERAL.

also evaluated the issues in this case pursuant to the standards and findings of the Alabama Supreme Court's rulings in *Continental Cas. Co. v. SouthTrust Bank, N.A.,* ---- So.2d ----, 2006 WL 29204, (2006):

> "Summary judgment is appropriate only when 'there is no genuine issue as to any material fact and · · · the moving party is entitled to a judgment as a matter of law.' Rule 56(c) (3), Ala.R.Civ.P., and *Dobbs v. Shelby County Econ. & Indus. Dev. Auth.,* 749 So.2d 425 (Ala.1999). The court must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable doubts in favor of the nonmoving party." *System Dynamics Int'l, Inc. v. Boykin,* 683 So.2d 419 (Ala.1996).

and in *Alfa Life Insurance Corporation v. Green,* 881 So.2d 987, (2003):

> "The Court must decide whether there was 'substantial evidence', when viewed in the light most favorable to the plaintiff, to warrant a jury determination. *City of Birmingham v. Sutherland,* 834 So.2d 755 (Ala.2002). In *Fleetwood Enters., Inc. v. Hutcheson,* 791 So.2d 920, 923 (Ala.2000) 'Substantial evidence' is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. 791 So.2d at 923 (quoting *West v. Founders Life Assurance Co. of Florida,* 547 So.2d 870, 871 (Ala.1989). The Court must view the evidence most favorably to the nonmovant." *Glenlakes Realty Co. v. Norwood,* 721 So.2d 174, 177, (Ala.1998).

This Court also considered the following additional standards and instructions from the Supreme Court in reaching its decisions in this case.

In *Rector v. Better Houses, Inc.,* 820 So.2d 75, Ala.,2001, the Supreme Court restated the Court's standard for determining whether the evidence before the trial Court made out a genuine issue of a material fact by detailing the weight the trial Court should apply to the evidence presented by each party. The Supreme Court stated:

> "When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to present substantial evidence creating such an issue. *Bass v. SouthTrust Bank of Baldwin County,* 538 So.2d 794, 797-98, (Ala.1989). Evidence is 'substantial' if it is of 'such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' *West v. Founders Life Assurance Co. of Florida,* 547 So.2d 870, 871, (Ala.1989). *Ex parte General Motors Corp.,* 769 So.2d 903, 906, (Ala.1999). When the basis of a summary-judgment motion is a failure of the nonmovant's evidence, the movant's burden, however, is limited to informing the court of the basis of its motion - that is, the moving party must indicate where the nonmoving party's case

suffers an evidentiary failure. *See General Motors*, 769 So.2d at 909 (adopting Justice Houston's special concurrence in *Berner v. Caldwell*, 543 So.2d 686, 691, (Ala.1989), in which he discussed the burden shift attendant to summary judgment motions); and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986) (stating that 'a party seeking summary judgment always bears the initial responsibility of informing the [trial] court of the basis of its motion'). The moving party must support its motion with sufficient evidence only if that party has the burden of proof at trial." *General Motors*, 769 So.2d at 909.

and further, the Supreme Court's guidance in *General Motors*, 769 So.2d at 909, wherein they stated:

"If the nonmovant cannot produce sufficient evidence to prove each element of its claim, the movant is entitled to a summary judgment, for a trial would be useless."

### III. THE COMPLAINT:
### AMERICAN GENERAL FINANCE, INC.
### v.
### CALVIN QUARLES, JR. and ELSIE QUARLES

## 1. FACTS:

The Complaint was filed on May 28, 2004 by the Plaintiff, American General Finance, Inc. (AMERICAN GENERAL), as a finance company, against the Defendants, Calvin Quarles, Jr. and Elsie Quarles (the QUARLES), alleging that they had defaulted on a real estate loan made by AMERICAN GENERAL to the QUARLES on October 13, 2000. AMERICAN GENERAL seeks:

A. A Declaratory Judgment to determine the rights, duties, title, interest and liabilities of the parties with regard to the real property at issue in this cause;

B. A judicial foreclosure and possession of the real property at issue; and,

C. A deficiency balance for the sum of $50,152.90, plus interest, late fees and attorney fees.

The purpose of this loan was to lower the QUARLES' total monthly debt payments.[26] The QUARLES testified in their depositions that they were informed by a representative of AMERICA GENERAL that this loan would result in their total monthly

---

[26] Depositions of Elsie Quarles at p. 65 and Calvin Quarles at p. 30.

debt payments being decreased and that obtaining this loan did in fact give them a lower total monthly debt payment.[27]

The amount financed in the 2000 loan was $48,751.50 and the proceeds of the loan were used to pay-off the balance due on a prior loan to AMERICAN GENERAL (made on July 22, 1997) in the amount of $23,936.16[28] (original loan amount was $33,461.90[29]). The proceeds of the loan were also used to payoff 6 other debts of the QUARLES.[30] The 2000 loan was at a lower interest rate than the 1997 loan, 12.35% on the 1997 loan[31] and 11.99% on the 2000 loan.[32]

At some point, following the January 10, 2003 loan, the QUARLES received a copy of their 2000 loan documents marked "Paid" and dated "JAN 00 2003".[33] At the time the QUARLES received the 2000 loan documents marked "Paid" they had made all required payments on this loan and their payments were "current".[34] After receiving the 2000 loan documents marked "Paid" the QUARLES sought legal advice and stopped making payments on this loan.[35]

AMERICAN GENERAL states that the 2000 loan documents were marked "Paid" in error and informed the QUARLES and their attorneys of the error.[36]

The QUARLES both admitted in their respective depositions that they were aware that the loan they had made with AMERICAN GENERAL, on January 10, 2003, did not refinance, and would not pay-off, their 2000 loan. They also admitted that they have not made the payments on their 2000 loan since having received the loan documents marked "Paid" and further that they still owed the balance on this loan.[37] Mr. Quarles stated in his deposition that at the time he received the 2000 loan documents marked "Paid" he

[27] Depositions of Elsie Quarrels, *supra*, at p. 65 and Calvin Quarles, Jr., *supra*, at pp. 29-30.
[28] Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 1.
[29] Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 1.
[30] Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 1.
[31] Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment, *supra*, at p. 1.
[32] Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 1.
[33] Exhibit "E" to "Defendants/Counter Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment".
[34] Deposition of TILLERY, at pp. 105, 125.
[35] "Defendants/Counter-Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment" at p. 10, and "Brief in Support of Plaintiff/Counter-Defendants' Motion for Summary Judgment" at p. 12.
[36] "Defendants/Counter Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment" at p. 10, and "Brief in Support of Plaintiff/Counter-Defendants' Motion for Summary Judgment" at p. 12.
[37] Depositions of Elsie Quarrels, *supra*, at p. 86 and Calvin Quarles, Jr., *supra*, at pp. 31-32.

knew that there was an error and that they (the QUARLES) would still have to pay-off the 2000 loan.[38]

The exact date when the QUARLES were informed by AMERICAN GENERAL that the 2000 loan documents had been marked "Paid" (in error) is unknown.[39] The first "known" written notice of the documents having been stamped "Paid" in error was a letter from AMERICAN GENERAL's attorney to the QUARLES' attorney, dated June 2, 2003, wherein the following was stated: "My clients have provided you with sufficient information to show that your clients did not pay the mortgage in full and that **the mortgage was erroneously stamped paid in full.**"[40] (Emphasis added)

The exact amount of the principal due on this loan, at the time the QUARLES received the documents marked "Paid," is unknown to the Court and neither party has provided any evidence as to what this amount should have been.[41] The Court is also unclear as to the correct amount of accrued interest, late charges, insufficient funds fees, and pre-payment penalties which may be due, if any. The Court is further concerned that neither party has provided a date, if any, when the QUARLES would be obligated to resume payments on this loan, **especially considering the fact that the QUARLES had sought legal assistance, had stopped making the payments on the 2000 loan, and thereby possibly incurred additional accrued interest, late charges, insufficient funds fees, and pre-payment penalties was all brought about <u>because of an error on the part of the Plaintiff, AMERICAN GENARAL.</u>**

---

[38] Deposition of Calvin Quarles, Jr., *supra*, at p. 32.
[39] Deposition of Mark R. Tillery, at pp. 104-107.
[40] Exhibit 'I' to "Defendants/Counter-Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment",
[41] The attorneys for AMERICAN GENERAL have stated the following amounts in letters to the QUARLES' attorneys in Exhibits "I", "J", "K" and "O" to the "Defendants/Counter Plaintiffs' Brief in Opposition to Plaintiff/Counter-Defendants' Motion for Summary Judgment", these sums were: Letter dated June 2, 2003, Exhibit "I", "American General does not intend to satisfy the mortgage until the **balance of $1,468.20 is paid.**"; Letter dated June 2, 2003, Exhibit "J", American General does not intend to satisfy the mortgage until the **balance of $42,329.91 is paid.**"; Letter dated July 11, 2003, Exhibit "K", "their pay-off balance, through August 15, 2003, is **$47,226.62**, and the amount to bring the account current and to cure the default is **$3,635.55.**"; and, Letter dated August 14, 2003, Exhibit "O", "That the sum is **$47,226.62** and is comprised of the following amounts: Principal amount due   **$42,329.91**, plus several other items for a total calculated through August 15, 2003, of **$47,226.62.**

## 2. PRECEDENTS CONSIDERED BY THE COURT:

In *Bay Minette Production Credit Ass'n v. Citizens' Bank*, 551 So.2d 1046, Ala., 1989, the Supreme Court of Alabama held that:

> "The recording of a release in satisfaction of a debt secured by a mortgage is not conclusive evidence of the actual payment of the mortgage. *Bank of Oakman v. Thompson*, 224 Ala. 87, 139 So. 238 (1932). Rather, we must look at the intent of the mortgagee and mortgagor in executing the instrument declaring the debt satisfied, together with the surrounding circumstances."

In *Gloor v. BancorpSouth Bank*, ---- So.2d ----, 2005 WL 2592159, Ala.Civ.App. 2005, which was reported after this case was filed, the Alabama Court of Civil Appeals addressed many of the issues which were present in this case.[42]   While not relying on the findings of the Court of Civil Appeals in this case, the discussion by the Court of the holdings in other jurisdictions, all of which were prior to the filing of this action, has been considered by this Court in reaching its decision.  In *Gloor* the Court of Civil Appeals stated:

> "The majority of courts in other jurisdictions have held that the cancellation and surrender of an instrument has no effect when it is the product of mistake or clerical error." *See, e.g., Guaranty Bank & Trust Co. v. Dowling*, 4 Conn.App. 376, 494 A.2d 1216 (1985); *Gover v. Home & City Sav. Bank*, 574 So.2d 306 (Fla.Dist.Ct.App.1991); *Richardson v. First Nat'l Bank of Louisville*, 660 S.W.2d 678 (Ky.Ct.App.1983); *FirsTier Bank, N.A. v. Triplett, supra; Los Alamos Credit Union v Bowling*, 108 N.M. 113, 767 P.2d 352 (1989); and *Peoples Bank of South Carolina, Inc. v. Robinson*, 272 S.C. 155, 249 S.E.2d 784 (1978).

Also in, *Gloor*, the Court of Civil Appeals addressed the holding of a North Carolina Court in *G.E. Capital Mortgage Services, Inc. v. Neely*, 135 N.C.App. 187, 519 S.E.2d 553 (1999), that:

> "[W]hen the mortgagors admitted that a note, which had been mistakenly cancelled by the mortgagee, was never paid and that the mortgagee had cancelled the debt in error, 'the only issue remaining [was] purely a *legal* one, namely the *effect* of the Note being marked 'Paid and Satisfied '"'135 N.C.App. at 190, 519 S.E.2d at 555.(emphasis in original)

---

[42] The issues in *Gloor* pertained to actions by the parties, Gloor and BancorpSouth Bank which occurred in August through November 2000, all of which were before the mistaken marking of the documents in this case by AMERICAN GENERAL, in January, 2003.

### 3. FINDINGS OF THE COURT:

The Plaintiff, American General Finance, Inc. (AMERICAN GENERAL), has made a *prima facie* showing that there is no genuine issue of a material fact pertaining to their Motion for Summary Judgment wherein they requested a Declaratory Judgment to determine the rights, duties, title, interest and liabilities of the parties with regard to the real property at issue in this cause since the Defendants, Calvin Quarles, Jr. and Elsie Quarles (the QUARLES), have admitted that they understood that the marking of the loan documents for the 2000 loan "Paid" was an error and that they understood that they continued to be responsible for paying this obligation.[43]

The Court also finds that the Plaintiff, American General Finance, Inc (AMERCAN GENERAL) has failed to provide the Court with 'substantial evidence' that they are entitled to a Summary Judgment as pertains to their request for an Order allowing for a judicial foreclosure and possession of the real property at issue and, for an Order for a deficiency balance for the sum of $50,152.90, plus interest, late fees and attorney fees.

**THRERFORE**, in response to the Plaintiff/Counter-Defendants' Motion for Summary Judgment, as it pertains to the original Complaint filed by Plaintiff, American General Finance, Inc. (AMERICAN GENERAL), the Court finds, and hereby **ORDERS** that:

1. The marking of the loan documents entered into between the Plaintiff, American General Finance, Inc., and the Defendants, Calvin Quarles, Jr. and Elsie Quarles, on October 13 2000 as having been "Paid" was a product of mistake or clerical error and therefore this marking of Paid" had no effect on said loan;

2. The loan entered into between the Plaintiff, American General Finance, Inc., and the Defendants, Calvin Quarles, Jr. and Elsie Quarles, on October 13, 2000, has not been "Paid" as indicated by the "Paid" stamp on the documents;

3. The Plaintiff, American General Finance, Inc., retains a security interest in the Defendants', Calvin Quarles, Jr. and Elsie Quarles, real estate located at 111 Lee Road 587, Smiths, Alabama 36877 and that the mortgage on said property remains a valid lien as if the mistake/clerical error had not been made;

---

[43] Depositions of Elsie Quarles at p. 86 and Calvin Quarles, Jr. at p. 33.

4. The Defendants, Calvin Quarles, Jr. and Elsie Quarles, remain liable for the principal amount due on the indebtedness that they incurred as a result of the loan which they entered into with the Plaintiff, American General Finance, Inc., on October 13, 2000 along with any accrued interest, late charges, or other fees or cost which may be awarded by a jury[44] as Ordered in the following paragraphs of this Order;

5. The amount of the principal due on this loan at the time the Defendants, Calvin Quarles, Jr. and Elsie Quarles, received the documents marked "Paid"; the correct amount of accrued interest, late charges, insufficient funds fee, and pre-payment penalty which the Defendants, Calvin Quarles, Jr. and Elsie Quarles, may be required to pay on this loan, if any; and, a date, if any, when the Defendants, Calvin Quarles, Jr. and Elsie Quarles, would be obligated to resume payments on this loan, remain genuine issues of fact which have not been resolved by "substantial evidence" presented by the Plaintiff, American General Finance, Inc., in support of their Motion for Summary Judgment and it is the **ORDER** of the Court that:

The issues of the correct amount of accrued interest; late charges; insufficient funds fees; and pre-payment penalties which the Defendants, Calvin Quarles, Jr. and Elsie Quarles, may be required to pay, if any, are to be determined by a jury;

6. Because it was the Plaintiff's, American General Finance, Inc., error in marking the 2000 loan documents "Paid" and then sending a copy of these documents to the Defendants, Calvin Quarles, Jr. and Elsie Quarles: and, because the Plaintiff, American General Finance, Inc., failed to provide the Court with sufficient information which the Court could use to determine the correct deficiency balance on this loan; the Plaintiff's, American General Finance, Inc., request for the Court to enter an Order establishing a deficiency balance in the sum of $50,152.90, plus interest and attorney fees; the Plaintiff's request for said Order is **DENIED**, and it is hereby **ORDERED**, that:

The issue of what the correct deficiency balance on this loan may be; and, what interest and other fees and/or costs[45] the Defendants, Calvin Quarles, Jr. and Elsie Quarles, may be required to pay, if any; is to be submitted to a jury for a determination of these amounts; and,

---

[44] Unless settled by the parties, if a settlement can be reached and presented to the Court.
[45] Accrued interest, late charges, insufficient funds fee, pre-payment penalty, etc.

7.    The Court finds that it was the Plaintiff's error in marking the 2000 loan documents "Paid" and, then, sending a copy of these documents to the Defendants; that the Defendants (the QUARLES) then stopped making payments on the 2000 loan, and sought legal advice concerning what effect, if any, the marking of "Paid" on these 2000 loan documents would have on their obligations pertaining to this loan. Therefore, the Plaintiff's, American General Finance, Inc., request for a judicial foreclosure and possession of the real property at issue is, at this time, **DENIED**.

## IV– THE COUNTER-COMPLAINT OF THE QUARLES,

On September 15, 2004 the Defendants, Calvin Quarles, Jr. and Elsie Quarles, as Counter-Plaintiffs (the QUARLES), filed a Counter-Complaint naming American General Finance. Inc,; American International Group, Inc.; American General Corporation; Merit Life Insurance; and, Yosemite Insurance Company, et al. as Counter-Defendants (AGF, et al."), claiming that the Counter-Defendants (AGF, et al.) are guilty of Fraudulent Misrepresentation, Fraudulent Suppression, negligence and/or wantonness, unjust enrichment, "Flipping," unconscionable practices, adding unwanted credit life insurance on to the loans which resulted in further increasing the amounts owed by the Defendants/Counter-Plaintiffs (the QUARLES) and other complaints and allegations.

## 1.  THE STANDARD APPLIED IN THIS CASE.

In *Foremost Insurance Co. v. Parham,* 693 So.2d 409 (Ala.1997), the Supreme Court returned to the "reasonable-reliance" standard in cases where fraud is an issue. The Court said:

> "[A] return to the 'reasonable reliance' standard will once again provide a mechanism . . . whereby the trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms."

## 2. THE COUNTER-PLAINTIFFS' CLAIMS

In their Counter-Complaint, the QUARLES stated the following claims against the Counter-Defendants, AGF, et al.:

A. FRAUD

      (1) A general claim of fraud. - That Counter-Defendants allowed TILLERY[46], to commit a fraud upon the QUARLES;

      (2) Fraudulent Misrepresentation.

      (a) That TILLERY fraudulently represented to the QUARLES that if they consolidated their bills into a loan with AGF, et al. they would save money "in the long run";

      (b) That TILLERY fraudulently represented to the QUARLES that they were required to purchase various forms of insurance in order to get the loans; and,

      (c) That TILLERY fraudulently represented to the QUARLES that the long-term effect of refinancing would reduce the total debt that the Quarles would be obligated to pay;

      (3) Fraudulent Suppression. - That AGF, et al. fraudulently suppressed the fact that financing alternatives existed that were less expensive than refinancing.

B. NEGLIGENCE and/or WANTONNESS

      (1) That AGF, et al. is guilty of wantonly hiring, training and supervision of AGF, et al.'s employees, including TILLERY, who were at all times acting as agent for AGF, et al.;

      (2) That at all times during their dealings with the QUARLES, AGF, et al., through their agent, TILLERY, have intentionally, negligently and/or wantonly retained money from the QUARLES;

C. INJUST ENRICHMENT

That AGF et al. has unjustly enriched itself at the expense of the QUARLES;

D. FLIPPING

That AGF, et al.'s practices "flipping," a practice whereby customers are encouraged to refinance existing loans rather than make new and separate loans;

---

[46] In all claims pertaining to TILLERY, the QUARLES allege that TILLERY was at all times acting as an agent for AGF, et al. AGF, et al. does not deny that TILLERY was, at all times stated in the filings, acting as their agent.

E. UNCONSIONABLITY

That the conduct, acts and omissions of AGF, et al., through their agent, TILLERY, in their dealings with the QUARLES constitute unconscionable practices, individually and collectively;

F. INCREASING COST BY ADDING UNWANTED INSURANCE

That AGF, et al. added unwanted credit life insurance on to the loans, thereby further increasing the amounts owed by the QUARLES in loans made by the AGF, et al., to them in 1997, 2000 and 2003.

## 3. COUNTER-DEFENDANTS' DEFENSES:

AGF, et al. presents as their first defense to the QUARLES Counter-Complaint claims, contentions and allegations, as they pertain to the loans made by AGF, et al.[47] to the QUARLES in 1997 and 2000, that all claims stated in the Counter-Complaint are bared by the 2 year statute of limitations established by § 6-2-38(l), *Code of Alabama,* (1975) as amended, which states:

> "All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."

The QUARLES in defense of this defense argued that their claims, contentions and allegations are subject to the "savings clause" provided by § 6-2-3, *Code of Alabama,* (1975) as amended, which states:

> "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."

The QUARLES rely heavily on *Ex parte Seabol,* 782 So.2d 212, Ala., 2000, in their opposition to the Counter-Defendants' Motion for Summary Judgment and in support of their claim that their Counter-Complaint should not be bared by § 6-2-38(l), *Code of Alabama,* (1975) as amended, but rather, because of the "savings clause" provided by § 6-2-3, *Code of Alabama,* (1975) as amended, this matter should be submitted to a jury for determination. The QUARLES argue that in *Seabol* the Supreme Court of Alabama, when examining the "saving clause" provided by § 6-2-3, established

---

[47] American General Finance, Inc. particularly

a rule that the time when a party discovered a fraud is a question for the jury. The Court in *Seabol* actually quoted from *Liberty Nat'l Life Ins. Co. v. Parker*, 703 So.2d 307, 308 (Ala.1997), which states in part:

> "**The question of when a party discovered or should have discovered the fraud is generally one for the jury.**" (Emphasis added)

However the QUARLES failed to provide the Court with the complete findings of the Supreme Court in the *Liberty National* case, which was, in its applicable parts, as follows:

> "The statute of limitations for fraud actions generally allows two years for filing a claim. Ala.Code 1975, § 6-2-38( *l*). The two-year period does not start to run until the plaintiff has actual knowledge of facts that would have put a reasonable person on notice of the fraud. Ala.Code 1975, § 6-2-3; *Hicks v. Globe Life & Acc. Ins. Co.*, 584 So.2d 458, 463 (Ala.1991). **The question of when the party discovered or should have discovered the fraud is generally one for the jury.**[48] (Emphasis added) *Kelly v. Connecticut Mutual Life Ins. Co.*, 628 So.2d 454, 458 (Ala.1993) (citing *Vandegrift v. Lagrone*, 477 So.2d 292, 295 (Ala.1985)).
> In *Kelly*, we stated (applying the rule under *Hicks*):
> '[F]raud is discoverable as a matter of law for purposes of the statute of limitations *when one receives documents* that would put one on such *notice* that the fraud reasonably should be discovered.' · · · However, · · · documents that are vague or that do not reasonably indicate that a fraud has occurred, based on the circumstances of each case, will not 'warrant a finding that the fraud claim is barred as a matter of law.'" 628 So.2d at 458 (emphasis in original; other emphasis omitted in the original) (quoting *Hickox v. Stover*, 551 So.2d 259, 262 (Ala.1989)).

The *Liberty National* Court then went on to evaluate the facts of the case and in applying the above rule that a *"fraud is discoverable as a matter of law"* for purposes of the statute of limitations *when one receives documents* that would put one on such *notice* that the fraud reasonably should be discovered" found as follows:

> "Liberty National presented undisputed evidence that in September 1990 Parker actually received the cover letter regarding the changes she had requested on the ALW policy. The letter was not vague. It was addressed to Earl, not to Parker, and it stated that the ALW policy was 'your policy.' Parker, a college-educated former teacher in her mid-50s when she received the letter, testified that she did not understand the phrase 'your policy' in the letter addressed to Earl to mean that it was Earl's policy. This evidence is insufficient to rebut the inference that a reasonable person would have understood the letter to refer to Earl as the owner of the ALW

---

[48] This is the only part of the Court's findings in *Seabol, supra*, quoted by the Quarles.

policy. We conclude that, as a matter of law, the September 1990 letter provided sufficient notice to start the running of the two-year limitations period." *Kelly*, 628 So.2d at 458. (Emphasis added)
. . .

**"Parker's claims are therefore time-barred."** (Emphasis added)

It is the opinion of this Court that the Supreme Court's findings in *Ex parte Seabo, supra*, and *Liberty National, supra*, do not support the QUARLES claim that the issues in their Counter-Complaint should be presented to a jury "as a matter of law." Rather, it is the opinion of this Court, that these cases require the trial Court to look into the issues of: (1) when did the QUARLES discover the existence of the alleged frauds; and, (2) why the QUARLES did not discover the fraud before the 2 year statute of limitations had run. After making these determinations then the Court is then to determine if the "savings clause" provided by § 6-2-3, *Code of Alabama*, (1975) as amended, is applicable to the QUARLES' fraud claims, in so far as they pertain to the 1997 and 2000 loans, and to rule on the Counter-Plaintiffs' Motion for Summary Judgment based upon this determination.

## 4. THE QUARLES' 1997 & 2000 LOANS:

The Court first looked at the applicable statutes, precedents, and rules to assist it in determining the correct evaluations that should be made of the Counter-Plaintiffs' Motion for Summary Judgment, and in doing so strictly applying the Supreme Court's guidance in *Continental Cas. Co., supra*, which requires that the trial court must accept the tendencies of the evidence most favorable to the nonmoving party, in this case the QUARLES, and must resolve all reasonable doubts in favor of the nonmoving party, again the QUARLES.

A. The "Savings Clause" - § 6-2-3, *Code of Alabama*, (1975) as amended:

The Court found several very persuasive cases that are directly on point as to what the trial Court should look at in determining the effect of § 6-2-3.

One of the cases that clearly states the ruling of the Alabama Supreme Court of Alabama in this area is that of the Federal Court, for the Northern District of Alabama, in its Memorandum Opinion in *Kelly v. A.L. Williams Corp.*, 669 F.Supp.1058, N.D.Ala., 1986,

"The Alabama Supreme Court has held that a party seeking to take advantage of § 6-2-3 has the affirmative burden of proving his lack of

16

notice. In *Johnson v. Shenandoah Life Ins Co.*, 291 Ala. 389, 396, 281 So.2d 636, 642 (1973), the court wrote:

'A party, availing himself of this statute, would be required to **aver with precision, the facts and circumstances** constituting the fraud – **and how and when these facts were discovered, what prevented a discovery before the bar of the statute was complete-and to acquit himself of all knowledge of facts which ought to have put him on inquiry**.''' (Emphasis added)

In *Associates Financial Services Co., Inc. v. First Nat. Bank of Mobile*, 292 Ala. 237, 292 So.2d 112, Ala. 1974, the Alabama Supreme Court stated:

"[a] plaintiff in a fraud action seeking to invoke the 'saving clause' (permitting the filing of a suit within one year after the discovery) in order to withstand a motion to dismiss, should **show the time and the circumstances of the discovery of the alleged fraud**."[49] (Emphasis added)

Recently, in 2003, the Supreme Court again restated what standard a Plaintiff must meet to escape the bar of the statue of limitations in a fraud action, when, in *Smith v. National Sec. Ins. Co.*, 860 So.2d 343, the Court found:

"The standard applicable to efforts to save a complaint when the complaint on its face is barred by the statute of limitations was established in *Miller v. Mobile County Board of Health*, 409 So.2d 420 (Ala.1981). In *Miller*, this Court held:

'When, as in this case, the plaintiff's complaint on its face is barred by the statute of limitations, the complaint must also show that he or she falls within the **savings clause** of § 6-2-3.' *Amason v. First State Bank of Lineville*, 369 So.2d 547 (Ala.1979). See *Associates Financial Services Co. v. First National Bank*, 292 Ala. 237, 292 So.2d 112 (1974).
. . . .

The plaintiff in *Miller* attempted to escape the bar of the statute of limitations pleading 'that Defendants committed fraud on Plaintiff by fraudulently concealing the defective and unreasonably dangerous condition of said product from Plaintiff after they knew said product was defective and dangerous.' 409 So.2d at 422. . . . Nevertheless, this Court found the complaint in *Miller* to be deficient, stating:

'The complaint fails to allege any of the facts or circumstances by which the appellees concealed the cause of action or injury. The complaint also fails to allege what prevented Mrs. Miller from discovering facts surrounding the injury.' See *Amason v. First State Bank of Lineville*, 369 So.2d 547 (Ala.1979); *Garrett v. Raytheon Co.*, 368 So.2d 516 (Ala.1979).

---

[49] Since this case was heard the statute of limitations for filing a fraud claim has been changed to 2 years

The plaintiffs make only generalized allegations to support their claim for fraudulent concealment."

In *Smith, supra*, the Supreme Court when looking at the Complaint filed in that action stated:

"Here, as in *Miller*, Smith's complaint 'fails to allege any of the facts or circumstances by which the appellees concealed the cause of action or injury,' and 'fails to allege what prevented [Smith] from discovering facts surrounding the [fraud].' 409 So.2d at 422. Smith's general reference to the alleged fraud as being 'of a continuing nature' is wholly lacking in specificity and equally deficient as a means of saving the action from the bar of the statute of limitations appearing on the face of the complaint."

In an effort to revive their claims against the Counter-Defendants, AGF, et al. the QUARLES have sought to invoke the "saving clause" provided by § 6-2-3, *Code of Alabama*, (1975), as amended, which establishes that an action based on fraud is not considered to have accrued until the discovery of the fraud by the aggrieved party, and that once the fraud has been discovered the party then has 2 years from the date of discovery to bring the action for fraud. However, the law, Rules of Civil Procedure and the case law in this area is quite extensive and the issue of determining the time of discovery of a purported fraud is well established in Alabama. As has been discussed in detail herein, it is necessary that a Plaintiff **MUST** plead certain issues before they can be granted the extension of the 2 year statute of limitations for fraud established by § 6-2-38(l), *Code of Alabama*, (1975) as amended. The Complaint must show the following: the time and circumstances of the discovery of the alleged fraud; the fraud must be alleged 'with particularity; and, what prevented the Plaintiff from discovering the alleged fraud before the bar of the statute was complete.

The QUARLES, while relying on the "savings clause" provided by § 6-2-3, *Code of Alabama*, (1975) as amended, have never established: in their Counter-Complaint; in their depositions; in their "Defendants/Counter-Plaintiffs' Response to Plaintiff/Counter-Defendants' First Set of Interrogatories, Request For Production and Request for Admissions"; in Defendants/Counter-Plaintiffs' Pre-Trial Contentions; or, even in the briefs of their attorney, the date when they discovered the frauds purportedly committed by AGF, et al. or any of AGF, et al.'s agents or what prevented them (the QUARLES) from discovering the alleged fraud before the bar of the statute was complete or any of

the other issues which are required before the provisions of the "saving clause" provided by § 6-2-3, *Code of Alabama*, (1975), as amended, to be provided to them.

AGF, et al. relied on the Alabama Supreme Court's decision in Liberty *National*, *supra*, to support their argument that the QUARLES' fraud claims are time-barred. That reliance is proper. Further in *Parker, supra*, the Supreme Court held that, "as a matter of law, the plaintiff's receipt of a letter concerning an insurance policy was sufficient notice to start the running of the limitations period." Similarly, in this case the Court concludes that, as a matter of law, the QUARLES' receipt of the loan documents was sufficient notice to start the running of the limitations period.

In *Kelly, supra*, the Federal Court for the Northern District of Alabama, in reviewing the law in Alabama as to what effect the Plaintiff's receipt of documents had on the discovery of a fraud, stated:

> "The law of Alabama is settled that the receipt of a contract inconsistent with the facts allegedly represented starts the running of the statute of limitations on a claim of fraud. In *Harrell v. Reynolds Metal Company*, 495 So.2d 1381 (1986), the Alabama Supreme Court stated the following: Facts constituting fraud are deemed discovered "when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered." *Gonzales v. U-J Chevrolet Co.*, 451 So.2d 244, 247 (Ala.1984); *Cooper Chevrolet, Inc. v. Parker*, 494 So.2d 386 (Ala.1985). If the facts regarding the discovery of the fraud are uncontroverted and they demonstrate that the discovery was more than one year prior to the commencement of the lawsuit, summary judgment is appropriate. *Gonzales, supra*, at 247; *Moulder v. Chambers*, 390 So.2d 1044, 1046 (Ala.1980). '**If a person signs or receives a document that discloses facts inconsistent with the facts allegedly misrepresented to that person previously, that person is deemed to have discovered the fraud upon signing or receiving the document, even if the person did not read the document.**' (Emphasis added) *Cooper Chevrolet, supra*; *Gonzales, supra*.
> . . . .
>
> Similarly, in *Colafranesco v. Crown Pontiac-GMC, Inc.*, 485 So.2d 1131 (Ala.1986), the Alabama Supreme Court held that **the receipt of documents contradicting oral representations as a matter of law**

triggered the running of the one year statute of limitations."[50] (Emphasis added)

In Footnote number 11 to *Kelly* the Court added:

"The standard for summary judgment in the Alabama courts is more restrictive than the standard applied in the federal court system. *Walker v. American Motorists Ins. Co.*, 529 F.2d 1163, 1165 (5th Cir.1976). The substantial evidence rule, which governs in federal courts, requires a party opposing summary judgment to make 'a far greater showing than the mere suspicion or scintilla of evidence criterion employed by the Alabama courts.' *Marcus v. St. Paul and Marine Ins. Co.*, 651 F.2d 379, 382 (5th Cir.1981). Accordingly, **it is significant that the Alabama Supreme Court found the Alabama law so strong and clear that summary judgment is appropriate where receipt of a document inconsistent with prior representations triggers the running of the statute of limitations.** (Emphasis added) If summary judgment is appropriate under the scintilla standard, *a fortiori*, summary judgment is proper in federal court under the substantial evidence standard."[51]

The Federal Court for the Middle District of Alabama in *Bullock v. United Ben. Ins. Co.*, 165 F.Supp.2d 1255. M.D.Ala., 2001, further evaluated the status of the law in Alabama pertaining to the discovery of a fraud and stated:

"The *Foremost* decision reestablished that the objective standard for determining the accrual date for a fraud claim imposes a duty to read documents received in connection with a particular transaction. Therefore, fraud claims accrue upon the earlier of: (1) actual discovery of the alleged fraud; or, (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms. The *Foremost* court held that, if applied retroactively to the plaintiff, who had not even completed high school, the objective reasonable reliance standard would require a finding that such a plaintiff should have discovered the alleged oral misrepresentations upon signing and receiving the sales documents. Thus, the court concluded that, under the objective standard, plaintiff's claims of fraud would be barred if not filed within two years of the plaintiff's receipt of the policy." (Cites omitted throughout)

---

[50] The statute of limitations for a fraud action has been changed to 2 years since the Court's finding in *Kelly* was entered

[51] The Court's finding of the law was based on the "old" *scintilla* standard as compared to the Federal Court's substantial evidence standard. NOTE that the "substantial evidence standard" as addressed by the Federal Court is now the standard used in the Alabama Court too.

In *Ex parte American General Finance, Inc.*, 795 So.2d 685, Ala., 2000, the Supreme Court in addressing the issue of when a Plaintiff should have discovered a fraud stated:

> "The question when the plaintiff discovered or should have discovered the fraud for statute-of-limitations purposes is generally one for the jury. *Parker,* 703 So.2d at 308. However, this Court has recognized that 'there are times when this question is removed from the purview of the jury" and can be decided as a matter of law.' *Kelly v. Connecticut Mut. Life Ins. Co.,* 628 So.2d 454, 458 (Ala.1993). 'The question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud.' *Hicks,* 584 So.2d at 463. This Court has explained that 'it is the knowledge of such *facts* that would have alerted a reasonable person to the existence of a potential fraud, and not actual knowledge of the fraud itself, that determines whether the question of the tolling of the limitations period in a fraud case [under § 6-2-3] can be decided as a matter of law.' *McGowan v. Chrysler Corp.,* 631 So.2d 842, 845 (Ala.1993). As a corollary to this rule, '[w]e have held that fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered.'" *Kelly,* 628 So.2d at 458 (quoting *Hickox v. Stover,* 551 So.2d 259, 262 (Ala.1989), overruled by *Foremost Ins. Co. v. Parham,* 693 So.2d 409 (Ala.1997)).

and in *Massey Automotive, Inc. v. Norris,* 895 So.2d 215, Ala., 2004, the Supreme Court found:

> "[T]his rule has long been established in Alabama:
> '[A] person who signs an instrument without reading it, when he can read, can not, in the absence of fraud, deceit or misrepresentation, avoid the effect of his signature, because [he is] not informed of its contents; and *the same rule [applies] to one who can not read, if he neglects to have it read, or to enquire as to its contents.*'" *Beck & Pauli Lithographing Co. v. Houppert,* 104 Ala. 503, 506, 16 So. 522, (1894) (emphasis in original).

And more importantly the Supreme Court held in *Gilmore v. M & B Realty Co., L.L.C.,* 895 So.2d 200, Ala., 2004, that:

> "[t]he trial court can enter a judgment as a matter of law in a fraud case [based on the expiration of the statutory limitations period] where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms [that clearly contradicted the alleged misrepresentations]." 693 So.2d at 421.

"The Court explained in *Foremost* that the documents the plaintiffs in that case had received, but had chosen not to read, would have put a reasonable person on notice of the true facts, 'if read or even briefly skimmed,' and the plaintiffs themselves acknowledged that had they read the documents, they would have learned the true facts inconsistent with the alleged misrepresentations. 693 So.2d at 422. As we explained in *Ex parte Seabol*, 782 So.2d 212, 216 (Ala.2000), the plaintiffs in *Foremost* 'could have easily read' the documents in question and determined the true facts, with the result that their 'failure to read the insurance documents would not have tolled the running of the limitations period, under the reasonable-reliance standard,' but that a different result could arise under application of that standard in a case where, such as in *Seabol*,'the documents at issue are not as easily understood.'" To like effect, see *Potter v First Real Estate Co.*, 844 So.2d 540, 552 (Ala.2002)."

The Court finds that the QUARLES received basically the same documentation in the 1997 and 2000 loans and similar documents, although much more detailed, in their 2003 loan. Those loan documents were not vague or ambiguous. They clearly recited the amount of the loan, the amount of each monthly payment and the number of months those payments were to be made and that the borrower was not required to purchase credit life insurance as a requirement to obtain the loan.

Mrs. Quarles stated in her deposition that she had graduated from Wachochee High School, that she could read and that she could "do mathematics," like adding and multiplying.[52] Mr. Quarles stated that he went to the 9th grade and that he can read.[53] The QUARLES stated that they received copies of all of the documents at the time they signed them,[54] that they took the documents home with them and that they could have read them at any time but that they did not read them.[55]

The QUARLES presented no evidence indicating that: they cannot read; that TILLERY prevented them from reading the documents they signed; or, that they could not have understood the DOCUMENTS had they taken the time to read them. Therefore, this Court finds that, under the reasonable-reliance standard, the QUARLES should have discovered the alleged misrepresentations (fraud) upon their signing and receiving the loan documents. And, that it is clear that the law in Alabama is that Summary Judgment

---

[52] Deposition of Elsie Quarles at p. 12.

[53] Deposition of Calvin Quarles, Jr. at pp. 11-12.

[54] See Exhibits "D" (the 1997 loan documents); "E" (the 2000 loan documents); "F" (the 2003 loan documents) to "Exhibits in Support of Plaintiff/Counter-Defendants' Motion for Summary Judgment" where, in each loan, the QUARLES signed that they had received copies of the loan documents.

[55] Deposition of Calvin Quarles, Jr. at pp. 2829.

is appropriate where the receipt of a document inconsistent with prior representations triggers the running of the statute of limitations. Thus, the Court finds that:

A.    The QUARLES' Counter-Complaint fails to allege any of the facts or circumstances used by the Counter-Defendants to conceal the fraud or injury incurred by the QUARLES from the alleged fraudulent acts of the Counter-Defendants, and the QUARLES failed to allege, in their pleadings, what, if anything, prevented them (the QUARLES) from discovering the facts surrounding the fraud alleged prior to the expiration of the 2 years allowed by the statute of limitations.

B.    The Counter-Plaintiffs (the QUARLES) failed to comply with the Supreme Court's holdings in *Associates Financial Services Co., Inc., supra,* in *Associates Financial Services Co., Inc., supra,* and in *Smith, supra,* in their Counter-Complaint. Therefore the QUARLES' claims, contentions and allegations, as they pertain to the loans made by AGF, et al. to the QUARLES on July 22, 1997 and October 13, 2000, are, as a matter of law, bared by the 2 year statute of limitations established by § 6-2-38(l), *Code of Alabama,* (1975) as amended. The very latest that the QUARLES could have filed claims of any type that pertained to these 2 loans was July 22, 1999 on the 1997 loan and October 13, 2002 on the 2000 loan and this action was filed on May 28, 2004 and the QUARLES' Counter-Complaint was not filed until September 15, 2004.

Therefore, the Court finds that, as a matter of law, the QUARLES' claims are barred by the applicable statute of limitations and the Counter-Defendants are entitled to a Summary Judgment in their favor as to all claims made by the Counter-Defendants, as pertains to the loans obtained on July 22, 1997 and October 13, 2999, and against the Counter-Plaintiffs.

B.    Rule 9, Alabama Rule of Civil Procedure:

Further, the Court, in reviewing the Pleadings of the QUARLES, has evaluated their Counter-Complaint for compliance with Rule 9, A.R.Civ.P., and the following rulings of the Alabama Appeals Courts:

Rule 9, *Alabama Rules of Civil Procedure,* PLEADING SPECIAL MATTERS, in paragraph 3, as pertains to pleading Fraud states:

> "(b) Fraud, . . . . In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

23

The Alabama Court of Civil Appeals, in *Lyde v. United Ins. Co. of America*, 628 So.2d 665, Ala.Civ.App., 1993, stated that:

> "Rule 9(b), *A.R.Civ.P.*, provides that when fraud is alleged, the circumstances constituting the fraud must be stated with particularity. This does not mean that every element must be pleaded with particularity. The pleader, however, must use more than generalized or conclusory statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained. *Robinson v. Allstate Ins. Co.*, 399 So.2d 288 (Ala.1981). The purpose of Rule 9(b) is to provide adequate notice to the opposing party of any claim for fraud so that he may properly prepare his case." *Caron v. Teagle*, 345 So.2d 1331 (Ala.1977)

Further, in *Angell v. Shannon*, 455 So.2d 823, Ala., 1984, the Supreme Court in affirming an Order dismissing the Plaintiff's Complaint on the grounds that the Complaint did not allege fraud with particularity, as required by Rule 9(b) A.R.Civ.P., and that the cause was barred by the statute of limitations, the Court said:

> "This judgment is affirmed on the authority of *Papastefan v. B & L Construction Co.*, 385 So.2d 966 (Ala.1980), which requires that the complaint show the **time and circumstances of the discovery of the alleged fraud** in order for a plaintiff to successfully assert that the statute of limitations has been tolled. Cf. A.R.Civ.P. 9(b); *Code of Alabama 1975*, §§ 6-2-3, 6-2-39." (Emphasis added)

Also, in *Smith, supra*, the Supreme Court stated:

> "Rule 9 of the Alabama Rules of Civil Procedure requires that fraud be alleged 'with particularity.' *Garrett v. Raytheon Co.*, 368 So.2d 516 (Ala.1979)."409 So.2d at 422."
>
> "Although under modern rules of civil practice the pleadings only need to put the defending party on notice of the claims against him, Rule 9(b) qualifies the generalized pleadings permitted by Rule 8(a), [Ala.R.Civ.P.] 'The pleading must show time, place and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained.'" Rule 9(b), [Ala.R.Civ.P.], Committee Comments [on 1973 Adoption].

The Court finds that the Counter-Plaintiffs (the QUARLES) failed to comply with the requirements of Rule 9(b), A.R.Civ.P. in their Counter-Complaint.

Therefore the QUARLES' claims, contentions and allegations as they pertain to the loans made by AGF, et al. to the QUARLES on July 22, 1997 and October 13, 2000 are, as a matter of law, barred by the 2 year statute of limitations established by § 6-2-38(l),

*Code of Alabama*, (1975) as amended. The very latest that the QUARLES could have filed claims of any type as they would pertain to these loans was July 22, 1999 on the 1997 loan and October 13, 2002 on the 2000 loan and this action was filed on May 28, 2004, and their Counter-Complaint was not filed until September 15, 2004, well after the 2 statute of limitations on any claims which may have arisen from the action of any party pertaining to these loans.

Therefore, the Court finds that, as a matter of law, the QUARLES' claims are barred by the applicable statute of limitations and the Counter-Defendants are entitled to a Summary Judgment in their favor as to all claims made by the Counter-Defendants, as pertains to the loans obtained on July 22, 1997 and October 13, 2999, and against the Counter-Plaintiffs.

## 5. CREDIT LIFE INSURANCE:

The QUARLES contend that AGF, et al. misrepresented to them that they were required to purchase single credit life insurance on their 1997, 2000 and 2003 loans. Mrs. Quarles specifically alleges fraudulent misrepresentation because TILLERY, as an agent of AGF, et al., represented to the QUARLES that the purchase of "credit life insurance" was required for them to obtain these loans without him providing any explanation that they were not required to purchase any insurance to obtain the loan[56] (The Court takes notice that Mr. Quarles did not address this issue in his deposition other than in his response to a question "And you heard your wife's testimony about these loan documents. Is there anything she testified to that you disagree with? his answer "No, I don't think so.")[57]

The QUARLES elected to purchase single life insurance with their 1997 loan.[58] They admitted that it was their decision to purchase such insurance.[59] They further admit that the optional nature of this insurance was disclosed in the "Federal Disclosure Statement", which states in pertinent part: "Credit life insurance and credit life insurance with disability insurance are not required to obtain credit and will not be provided unless

---

[56] Deposition of Elsie Quarles at pp. 32, 98-101.
[57] Deposition of Calvin Quarles, Jr. at p. 28.
[58] Depositions of Elsie Quarles at p. 46, and Calvin Quarles at p. 7. Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p.3.
[59] Depositions of Elsie Quarles at p. 101, and Calvin Quarles at p. 7.

you sign and agree to pay the additional cost."[60]  Mr. Quarles provided his signature just below this disclosure and next to the statement: "I want single credit life insurance."[61] The premium and term for the credit life insurance purchase was disclosed just to the left of Mr. Quarles' signature.[62]     The optional nature of the QUARLES insurance purchase was further evidenced by the "Insurance Disclosure Summary", which states in part:

> **I WANT TO PURCHASE THE INSURANCE NOTED BELOW AND HAVE THE INSURANCE PREMIUM FINANCED AS A PART OF MY LOAN. I FULLY UNDERSTAND THAT I DO NOT HAVE TO PURCHASE ANY OF THE FOLLOWING INSURANCE TO GET MY LOAN.**[63] (Emphasis in Original)

The insurance products purchased by the QUARLES and the premiums for said products appear just below this disclosure.[64]  The QUARLES' signatures appear at the bottom of this document.[65]

The Court further notes that even though the QUARLES stated in their depositions that TILLERY told them that the "purchase of credit life insurance was required for them to obtain the loan," the QUARLES did not elect to purchase credit life insurance with their 2000 loan.[66]     Although they elected not to purchase credit life insurance, the optional nature of such insurance was disclosed in the "Federal Disclosure Statement", which states in pertinent part: "Credit life insurance and credit life insurance with disability insurance are not required to obtain credit and will not be provided unless you sign and agree to pay the additional cost."[67]     Mrs. Quarles did elect to purchase an insurance policy entitle "MERIT L.I.F.E. PLUS."[68]     The optional nature this insurance

---

[60] Depositions of Elsie Quarles at p. 46, and Calvin Quarles at p. 7.  Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 3.
[61] Depositions of Elsie Quarles at p. 46-47, and Calvin Quarles at p. 7.  Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 3.
[62] Depositions of Elsie Quarles at p. 47, and Calvin Quarles at p. 7.  Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 3.
[63] Depositions of Elsie Quarles at p. 48, and Calvin Quarles at p. 7.  Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 6.
[64] Depositions of Elsie Quarles at p. 49, and Calvin Quarles at p. 7.  Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 6.
[65] Exhibit "D" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 6.
[66] Depositions of Elsie Quarles at pp. 68-69, and Calvin Quarles at p. 7.  Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 3.
[67] Depositions of Elsie Quarles at p. 68, and Calvin Quarles at p. 7.  Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 2.
[68] Deposition of Elsie Quarles at p. 70, and Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 3.

purchase was evidenced by the signed "Insurance Disclosure Summary", which states in pertinent part:

**I WANT TO PURCHASE THE INSURANCE NOTED BELOW AND HAVE THE INSURANCE PREMIUM FINANCED AS A PART OF MY LOAN. I FULLY UNDERSTAND THAT I DO NOT HAVE TO PURCHASE ANY OF THE FOLLOWING INSURANCE TO GET MY LOAN.**[69] (Emphasis in Original)

The insurance product purchased by Mrs. Quarles and the premiums for said products appear just below this disclosure.[70] The QUARLES' signatures appear at the bottom of this document.[71]

The Court further takes notice that even though the QUARLES stated in their depositions that TILLERY told them "that the purchase of credit life insurance was required for them to obtain the loan," the QUARLES did not elect to purchase credit life insurance, nor were they "required" to purchase such insurance, when they took out the 2003 loan.[72] The QUARLES admit that the "Insurance Disclosure Statement" informed them that the purchase of insurance was optional and did not affect AGF, et al.'s decision to extend credit.[73]

The QUARLES admit that they neither read these documents in full nor did they ask any questions regarding their contents,[74] and that they received a copy of these loan documents to take home with them, but that they also failed to read them at home.[75]

More importantly, each set of loan documents indicated that Credit Life Insurance was not required for the applicant to obtain the loan. Thus, the fact that Credit Life insurance was not required to obtain the loans was not truly "new information" when they obtained the 2003 loan. At the latest, then, the QUARLES had sufficient information to

---

[69] Depositions of Elsie Quarles at pp. 69-70, and Calvin Quarles at p. 7. Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 6.
[70] Depositions of Elsie Quarles at p. 70, and Calvin Quarles at p. 7. Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 3.
[71] Exhibit "E" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 3.
[72] Depositions of Elsie Quarles at pp. 78-79, and Exhibit "F" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 11.
[73] Depositions of Elsie Quarles at p. 87, and Calvin Quarles at p. 7. Exhibit "F" to Plaintiff/Counter-Defendants' Motion for Summary Judgment at p. 11.
[74] Depositions of Elsie Quarles at p. 71, and Calvin Quarles at pp. 20-21.
[75] Depositions of Elsie Quarles at p. 61, and Calvin Quarles at pp. 28-29.

place them on notice of a potential fraud in 2003, when the received the loan documents for the third (and possibly the fourth[76]) and final loan.

Assuming that the actions of TILLERY did constitute a false statement or representation, the QUARLES could not have justifiably relied upon it. The Alabama Supreme Court in *Williams v. Norwest Financial Alabama, Inc.*, 723 So.2d 97, Ala.Civ.App., 1998, stated that"

> "Reliance upon a particular statement should be assessed by the following standard:
> 'A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." ' " *Hickox v. Stover*, 551 So.2d 259, 263 (Ala.1989), quoting *Southern States Ford, Inc. v. Proctor*, 541 So.2d 1081, 1091-92 (Ala.1989) (Hornsby, C.J., concurring specially).

The language in the loan documents in this case indicated that the purchase of credit insurance was not required in order to obtain the loans did not appear in fine print and it was clear and unambiguous. If the QUARLES had read the documents, they would have understood that credit insurance was not required for them to obtain the loan. Even assuming that the TILLERY's' actions constituted a false statement or representation; it was so patently and obviously false that the QUARLES would have had to close their eyes to avoid the discovery of the truth.

Therefore the Court finds that the Counter-Defendants, AGF, et al. are entitled to a summary judgment, as a matter of law, on the issue of TILLERY having allegedly made the fraudulent misrepresentations to the QUARLES that the purchase of credit insurance was required for them to obtain any or all of these loans.

## 6.    FRAUD, MISREPRESENTATION or SUPPRESSION"

The other claims by the QUARLES of fraud, by misrepresentation or suppression, are so intertwined that to consider them each, independently, would result in additional time and the necessity of repeating the Court's findings for each of the claims, most of which were decided by the same evidence and precedents, for each charge, claim or

---

[76] If the loan in 1886 which is not a part of this action is counted

allegation. Therefore the Court will consider each of these claims, as a unit, in this section of this Order.

A. Misrepresentations by TILLERY.

The QUARLES allege that TILLERY is guilty of misrepresentation and fraud by representing that the long-term effect of refinancing would reduce the total debt that the QUARLES would be obligated to pay and that TILLERY fraudulently represented to the QUARLES that if they consolidated their bills into 1 loan with AMERICAN GENERAL they would save money "in the long run".

The QUARLES have failed to present any evidence that these misrepresentations and/or representations made by TILLERY were in fact false. They seem to base their claim on the statements made in their depositions such as:

In Mrs. Quarles Deposition:

Page 64 – "Just like the loan in '97. Mark gave me the advice that he could still work things out for my good, you know, that he had me at the best interest, you know, and **it would help me in the long run** that he put them together."

Page 97 – "And Mark said he had seen where we had some more bills and he could help us out with them and he could **save us some money in the long run**."

Mr. Quarles never made a statement concerning TILLERY having made such misrepresentations and/or representations. However, in response to the question "And you heard your wife's testimony about these loan documents. Is there anything she testified to that you would disagree with?" he responded "No, I don't think so." (Page 28 of his deposition)

The Alabama Supreme Court in *Brown ex rel. Brown v. St. Vincent's Hosp.*, 899 So.2d 227, Ala., 2004:

"[s]ummary judgment is not prevented by 'conclusory allegations' or 'speculation' that a fact issue exists. Bare argument or conjecture will not satisfy a [nonmovant's] burden to offer facts to defeat the motion." *Riggs v. Bell*, 564 So.2d 882, 885 (Ala.1990) (citations omitted). This Court has reiterated this principle frequently since *Riggs*, citing that case: *McGarry v. Flournoy*, 624 So.2d 1359, 1361 (Ala.1993); *Crowne Invs., Inc. v. Bryant*, 638 So.2d 873, 878 (Ala.1994) ("[M]ere conclusory allegations or speculation that fact issues exist will not defeat a properly supported summary judgment motion, and bare argument or conjecture does not satisfy the nonmoving party's burden to offer facts to defeat the motion."); *Blackburn v. State Farm Auto. Ins. Co.*, 652 So.2d 1140, 1142 (Ala.1994); *Huff v. United Ins. Co. of America*, 674 So.2d 21, 24

(Ala.1995); and *Reid v. Jefferson County*, 672 So.2d 1285, 1290 (Ala.1995) ( "[the nonmovant's] statements are conclusory. Thus, those statements do not constitute substantial evidence and, therefore, do not warrant submitting [his] claim to the jury"). This Court has stated: "[A party opposing a summary-judgment motion] must present facts, not merely inferences based upon belief, that counter facts offered in support of the motion." *Davis v. Ford Motor Credit Co.*, 599 So.2d 1123, 1125 (Ala.1992).

The claims made by the QUARLES are, in the opinion of the Court, at best, speculation on the part of the QUARLES. They have not presented any evidence that their belief that the statements alleged to have been made by TILLERY are in fact not true. It is the Court's opinion that the Plaintiffs/Counter-Defendants are entitled to Summary Judgment on these issues as a mater of law.

B. Suppression of Facts by TILLERY:

The QUARLES also contend, in their Counter-Complaint, that the effect of taking the 2000 loan, which paid the balance on the 1997 loan, should have been disclosed to them, along with the fact that other financing alternatives existed.

"Suppression of a material fact which the party is **under an obligation to communicate** constitutes fraud. The **obligation to communicate may arise from the confidential relations** of the parties or from the particular circumstances of the case. A party must have knowledge of a fact in order to be liable for its suppression. *Cornelius v. Austin*, **542 So.2d 1220, 1224 (Ala.1989). The obligation to communicate, or the duty to disclose, must be evaluated in light of the particular facts and circumstances of each case.** Mere silence is not fraudulent in the absence of a duty to disclose. A duty to disclose may arise from the particular circumstances of the case, from a confidential relationship, or from a request for information." (Citations omitted)(Emphasis added).*McGowan v. Chrysler Corp.*, 631 So.2d 842 (Ala.1993).

In *Williams, supra*, the Supreme Court stated:

"To recover on a claim of fraudulent suppression, the plaintiff must prove: (1) the suppression of a material fact (2) that the defendant was under a duty to communicate (3) because of a confidential relationship between the parties or the circumstances of the case and (4) which caused injury as a proximate consequence. *Garner v. JMIC Life Ins. Co.*, 693 So.2d 478 (Ala.Civ.App.1997)

The QUARLES did not indicate in their Depositions if they had ever discussed with TILLERY the effects of refinancing the 1997 loan with the 2000 loan and did not inquire as to any financing alternatives. Additionally, no evidence exists that would give

rise to a confidential relationship between the parties. The QUARLES had previously dealt with AGF, et al. several occasions; however, prior business contact alone does not give rise to a confidential relationship. *Amerson v. Gardner*, 681 So.2d 570 (Ala.Civ.App.1996). Mr. Quarles stated in his deposition that he did not know TILLERY outside of the taking out of the loans and he knew nothing about TILLERY's background.[77] Mrs. Quarles stated in her deposition that she did not know anyone from AMERICAN GENERAL outside the context of taking out a loan.[78] TILLERY did state that he met with the QUARLES on one occasion, at their home, and that they sat at the kitchen table discussing their loan application.[79] TILLERY also stated that it was normal for him to go to a customer's home to discuss a loan application[80] and to look at the house, if it was being used as collateral for a loan.[81] In *Williams, supra,* the employees of Northwest visited in the residence of a borrower in Tuskegee to appraise it for a loan. While they were there they offered to let the borrower sign the loan papers to save them a trip to Montgomery. In *Williams* the Court of Civil Appeals found that the actions of the employees of Northwest did not rise to a confidential relationship between the parties.

In *Robinson v. JMIC Life Ins. Co.,* 697 So.2d 461 (Ala.1997), the Alabama Supreme Court affirmed a summary judgment on a fraudulent suppression claim where the document itself put the plaintiff on notice that she was purchasing credit insurance.

Following *Williams, supra,* and *Robinson, id.* this Court therefore concludes that there was no confidential relationship between the parties, nor did the QUARLES inquire as to any financing alternatives available in their obtaining any of the loans and therefore there was no duty to disclose such information on the part of TILLERY, nor does the Court find a suppression of a material fact on TILLERY's part, because the documents the QUARLES signed were sufficient to put the QUARLES on notice that the purchase of insurance was not required and the overall effect of their obtaining each of the loans.

The QUARLES have failed to produce 'substantial evidence', when viewed in the light most favorable to the QUARLES, that would indicate that the transactions, in obtaining of all three loans, were anything other than arm's-length transactions between

---

[77] Deposition of Calvin Quarles, Jr. at p. 18
[78] Deposition of Elsie Quarles at p. 37
[79] Deposition of Mark Robert Tillery at p. 92
[80] *Id,* at p. 92.
[81] *Id,* at p. 99.

the parties. Accordingly, the Court concludes that AGF, et al. is entitled to Summary Judgment as a matter of law on this count.

## 7. "SPECIAL RELATIONSHIP"

As a major case quoted by the QUARLES in support of their position that TILLERY established a "special relationship" with them and thereby was obligated to disclose certain information which he did not disclose, the QUARLES presented a quote from the Supreme Court's holding in *Potter v. Real Estate Co., Inc.*, 844 So.2d 540, Ala., 2002, wherein the Court found that a **special relationship** existed between the parties:

> "Examining the transaction in this case for its consistency with *Dinsmore* and its differences from *Foremost*, we first note that Borden told Jamie Potter that she represented Joseph and Jamie 'as much as she represented the seller.' Moreover, the agency agreement prepared by First Real Estate and executed by First Real Estate, Borden, Joseph Potter, and Boler states, 'Broker will not represent the interests of one party to the exclusion or detriment of the interest of the other party.' The agency agreement further states, 'Broker in its capacity as Limited Consensual Dual Agency, will disclose to both Seller and Buyer all facts and information which Broker believes are material or which might affect Seller's or Buyer's decisions with respect to this transaction.' These facts presented the jury with a contractual basis that formalized the existence of a special relationship of trust or confidence between Borden and the Potters that included a duty to disclose and that lulled the Potters into a feeling of security. *See Dinsmore*, 225 Ala. 550, 144 So. 21 (1932). The duty to disclose is at the heart of the special relationship, and this duty was expressly assumed by contract and by statements made by Borden that she was representing the buyers as much as the sellers. See § 6-5-102 ('Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."). No special relationship existed between the insurance salesman and the purchaser in *Foremost*."
>
> "This application of the reasonable-reliance standard is consistent with *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757 (Ala.1983), described by Justice Houston in his dissent in *Hickox*, 551 So.2d at 266-67, as the appropriate standard by which reasonable reliance should be determined. In *Torres*, this Court stated as follows:
> 'In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover. *Bedwell Lumber Co. v. T & T Corporation*, 386 So.2d 413, 415 (Ala.1980).' *If the purchaser blindly trusts, where he should not, and*

*closes his eyes where ordinary diligence requires him to see, he is willingly deceived, and the maxim applies, 'volunti non fit injuria.'[82]."* 438 So.2d at 759. (Emphasis in original)

In Mrs. Quarles' deposition she made the following statements referencing what she believed to be a "special relationship" between the QUARLES and TILLEY:

Page 32 of Deposition:

In response to a question;

"he (TILLERY) said he was working for my best interest."

Page 64:

"Just like the loan in '97, Mark (TILLERY) gave me the advice that he could still work things out for my good, you know, that he had me and my best interest, you know, and would help me in the long run that he put them together."

Page 66:

"I still trusted Mark. You know, Mark -- like I said, Mark was    I had **been doing business** with Mark, and I trusted Mark. And although everything he put before me, like you said, it was my    I was supposed to have been reading it. But I trusted Mark just that well that he had me in interest in what he was doing; the work he was doing, he was doing it because he was going to help me in the long run. That's why I didn't take the time to read all of those papers, because I trusted Mark." (Emphasis added)

Page 67:

"I know it was my responsibility to read it, but I didn't because I trusted Mark."

Page 100:

Q: . . . you didn't say anything about insurance, did you?
A   Well I didn't say it because I didn't understand, you know.  He (TILLERY) was saying like this loan, you know, is going to help me out; and if I didn't have this insurance, then I couldn't get the loan, you know."

Page 100-101:

Q: And these documents specifically state that you don't have to have that insurance, correct, in order to get the loan?
A: Yeah, that's what the documents say,  But I was still trusting Mark, you know.  What Mark told me, that's what I was going by."

---

[82] "There is no injury to one who consents."

33

Page 102-103:

> Q: At the time you were making these loans, if you would have read these documents, would you have believed the documents or what Mark told you?
> A: I would believe Mark because I was   I was just trusting Mark. That's what I was doing. That was Mark's job, you know. And he always helped me out. So I just thought he was helping me out then."
> Q: You would have believed him over the documents. Correct?
> A: I would have believed Mark."

However in other areas of her deposition Mrs. Quarles stated:

Page 36:

> Q: Why did that lead you to American General?
> A. I really don't know what led me to American General. I reckon with **my husband**.

This last statement by Mrs. QUARLES appears to the Court to indicate that she went, with her husband, to obtain the loans and relied upon her husband in the making of the loans. The Court also notes from reviewing the documents signed by the QUARLES during the processing of the documents to obtain all these loans, Mr. Quarles signed as the "first line" signer, or "Principal Borrower" (on the 1997 and 2000 loans) and as Borrower" (on the 2003 loan) and Mrs. Quarles signed as the "second line" signer, or the "Other Borrower" (on the 1997 and 2000 loans) and as "Co-Borrower" (on the 2003 loan).

The QUARLES further allege that: they were not experienced in insurance and finance matters; that they placed a "special trust" and "confidence" in TILLERY, as agent for AGF, et al.; that they consequently relied upon TILLERY to properly advise them with respect to such matters; that AGF, et al. had superior knowledge and bargaining power over the QUARLES; AGF, et al.; that through their agent TILLERY, undertook a duty to advise the QUARLES, held themselves out as experts and, as being persons interested in the QUARLES' well being; generally exhibited behavior inconsistent with the typical debtor-creditor relationship; and, that AGF, et al.'s conduct amounts to a breach of their individual contractual, professional and fiduciary obligations and duties to the QUARLES.[83]

---

[83] Exhibit "A" to AGF, et al.'s Motion for Summary Judgment.

As listed herein above the QUARLES had obtained a number of loans, credit cards and other financial transactions, specifically; Cook Finance Company; Wells Fargo; Georgia Smith; Barnett Bank; Dodge-Chrysler Credit; and, Mann Finance. Further, the QUARLES had a checking and a savings account with CB&T along with credit cards from Sears; Nations Bank; and, Citibank and they were therefore familiar with the procedures necessary to obtain a loan, credit card or other financial assistance from a lending institution similar to AGF, et al.

In *Torres v. State Farm Fire & Casualty Co.*, 438 So.2d 757 (Ala.1983), the Supreme Court wrote:

> "Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the **plaintiffs' reliance** must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover····" (Emphasis added)

Also, in *Welch v. Montgomery Eye Physicians, P.C.*, 891 So.2d 837, Ala., 2004, the Supreme Court said:

> "This Court has stated that a confidential relationship exists when 'confidence is reposed by one party in another, and the trust or confidence is accepted under circumstances which show that it was founded on intimate personal and business relations existing between the parties, which gave the one advantage or superiority over the other.'" *Cannon v. Gilmer*, 135 Ala. 302, 305, 33 So. 659, 659 (1903).

Then, in addressing the Creditor-debtor relationship in *University Federal Credit Union v. Grayson*, 878 So.2d 280, Ala., 2003, the Supreme Court stated:

> "Traditionally, the creditor-debtor relationship between a bank and its customer does not impose a fiduciary duty of disclosure on a bank. *Faith, Hope & Love, Inc. v. First Alabama Bank of Talladega County, N.A.*, 496 So.2d 708, 711 (Ala.1986). On the other hand, a fiduciary duty may arise when a customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances. *K & C Dev. Corp. v AmSouth Bank, N.A.*, 597 So.2d 671, 675 (Ala.1992); *Baylor v. Jordan*, 445 So.2d 254, 256 (Ala.1984). Moreover, a fiduciary or confidential relationship has been defined as one in which 'one person occupies toward another such a position of adviser or counselor as reasonably to inspire confidence that he will act in good faith for the other's interests, or when

one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side, there is an overmastering influence, or, on the other, weakness, dependence, or trust, justifiably reposed; in both an unfair advantage is possible. It arises in cases in which confidence is reposed and accepted, or influence acquired, and in all the variety of relations in which dominion may be exercised by one person over another."*Holdbrooks v. Central Bank of Alabama, N.A.*, 435 So.2d 1250, 1252 (Ala.1983)(quoting 15A C.J.S. *Confidential* (1967)); see also *K & C Dev. Corp.*, 597 So.2d at 675.

And in *Baylor v. Jordan*, 445 So.2d 254, Ala., 1984, the Supreme Court had earlier addressed this relationship when it found:

> "Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship which does not impose a fiduciary duty of disclosure on the bank. A fiduciary duty may arise when the customer reposes trust in a bank and relies on the bank for financial advice, or in other special circumstances." See *Brasher v. First National Bank of Birmingham*, 232 Ala. 340, 168 So. 42 (1936); Annot., "Bank as Fiduciary-Duty of Disclosure," 70 A.L.R.3d 1344 (1976).

In *Massey, supra*, the Supreme Court found:

> "Under the reasonable-reliance standard, a judgment as a matter of law in favor of the defendant in a fraud case is appropriate where the party who claims fraud in the transaction was fully capable of reading and understanding the terms of the contract involved in the transaction, but instead blindly relied on the defendant's oral representations to the exclusion of written disclosures in the contract to the contrary." *See Foremost Ins. Co.*, 693 So.2d at 421.

Therefore, this Court finds that:

A.  The QUARLES presented no evidence indicating that they cannot read, that TILLERY had prevented them from reading the documents they signed, or that they could not have understood the DOCUMENTS had they taken the time to read them.

B.  Under the reasonable-reliance standard, the QUARLES could not "blindly rely on TILLERY's oral representations ⋯ to the exclusion of written disclosures in the loan documents;"

C.  The QUARLES have failed to present substantial evidence to support their claim that TILLERY established a "special or confidential" relationship with them, or that there was a fiduciary duty owed by TILLERY to them;

D. Viewing the evidence in the light most favorable to the QUARLES, their claims of fraudulent misrepresentation and suppression are barred by the applicable statute of limitations, and that, even if they were not, the QUARLES have not established that they reasonably relied on AGF, et al., or TILLERY's, alleged misrepresentations or that AGF, et al., or TILLERY, suppressed any material facts which they were under any duty to disclose

It is the Court's finding that the Plaintiffs/Counter-Defendants are entitled to Summary Judgment, as a matter of law, on all counts, claims and allegations pertaining to AGF, et al., or TILLERY's, suppression, misrepresentations or obligations arising from a "special or confidential" relationship or from a fiduciary duty owed to the QUARLES, as none existed

## 8. NEGLIGENCE and WANTONNESS:

The QUARLES also allege various theories of recovery sounding in negligence and wantonness. The Court finds that their negligence and wantonness claims are time-barred by the applicable statute of limitations. Negligence and wantonness claims have a statutory period of limitations of two years from the date that the injury occurred. *Henson, supra.* Further, Alabama has no "discovery rule" with respect to negligence or wantonness actions that would toll the running of the limitations period. *Id.* If, in fact, the QUARLES were injured by any negligent or wanton conduct of the defendants, the latest that the injury could possibly have occurred was on July 22, 1999 as to the 1997 loan and on October 13, 2002 in the case of the 2000 loan. The Counter-Complaint was not filed until September 15, 2004, after the statutory limitations period had expired.

It is the Court's finding that the Plaintiffs/Counter-Defendants are entitled to Summary Judgment on all counts, claims and allegations pertaining to negligence and/or wantonness made by the Defendants/Counter-Plaintiffs, Calvin and Elsie Quarles as a mater of law.

## 9. UNJUST ENRICHMENT:

The QUARLES presented no evidence to support their allegation that AGF, et al. had unjustly enriched itself at the expense of the QUARLES. Therefore the Court finds that that AGF, et al. is entitled to summary judgment as a matter of law on the allegation of unjust enrichment.

10. **FLIPPING:**

The QUARLES also contend in their Counter-Claim that AGF, et al. fraudulently suppressed the fact that financing alternatives existed that were less expensive than refinancing. The QUARLES contend that AGF, et al.'s practices "flipping," a practice whereby customers are encouraged to refinance existing loans rather than make new and separate loans. The Supreme Court has defined "flipping" in *Ex parte First Family Financial Services, Inc.*, 718 So.2d 658, Ala., 1998, when the Court stated:

> "'Flipping' occurs when a lender requires a borrower in need of additional funds to refinance an existing loan rather than allowing the borrower to take out a new, separate loan."

In this case the QUARLES were allowed to take out more than one loan, the 2003 was taken out while they still had the 2000 loan, and in fact, the QUARLES were not allowed to consolidate their 2000 loan with the 2003 loan even though **they had requested** that they be allowed to do so.[84] Therefore, by definition, the Counter-Defendants could not be accused, in this case, of "flipping" loans with the QUARLES.

The claim of "flipping" is also bared by the two (2) year statute of limitations established by § 6-2-38(l), *Code of Alabama*, (1975) as amended.

Further, the QUARLES presented no evidence to support this contention, and therefore the Court finds that AGF, et al. is entitled to summary judgment as a matter of law on the allegation of "flipping."

11. **UNCONSCIONABLE PRACTICES:**

As to all Counts and Claims by the QUARLES pertaining to the issues of alleging that the conduct, acts and omissions of AGF, et al., through their agent, TILLERY, in their dealings with the QUARLES constitute unconscionable practices, individually and collectively the Supreme Court of Alabama stated in *Sanders v. Colonial Bank of Alabama*, 551 So.2d 1045, Ala.,1989:

> "Doctrine of unconscionability is not available to obtain affirmative relief, but only as defense. See *Cowin Equipment Co v. General Motors Corp.*, 734 F.2d 1581 (11th Cir.1984) (holding that the doctrine of unconscionability is not available to obtain affirmative relief, but only as a defense); *Lloyd v. Service Corp. of Alabama*, 453 So.2d 735 (Ala.1984); and *Ex parte Redshaw, Inc.*, 524 So.2d 367 (Ala.Civ.App.1987). For cases

---

[84] Depositions of Elsie Quarles at pp. 76-77 and Calvin Quarles at p. 22.

to like effect in other jurisdictions, see *Galvin v. First National Monetary Corp.,* 624 F.Supp. 154 (E.D.N.Y.1985); *Bennett v. Behring Corp.,* 466 F.Supp. 689 (S.D.Fla.1979); *Jamestown Farmers Elevator Inc. v. General Mills,* 413 F.Supp. 764 (D.N.D.1976), *rev'd on other grounds,*552 F.2d 1285 (8th Cir.1977); *Whitman v. Connecticut Bank & Trust Co.,* 400 F.Supp. 1341 (D.Conn.1975); *Best v. United States Bank of Oregon,* 78 Or.App. 1, 714 P.2d 1049 (1986), *aff'd,*303 Or. 557, 739 P.2d 554 (1987); *Witmer v. Exxon Corp.,* 260 Pa.Super. 537, 394 A.2d 1276 (1978); and *Vom Lehn v. Astor Art Galleries, Ltd.,* 86 Misc.2d 1, 380 N.Y.S.2d 532 (Sup.Ct.1976). See, also, the following treatises: J. White & R. Summers, *Uniform Commercial Code* § 4-8 (2d ed. 1980); W. Jaeger, 15 *Williston On Contracts* § 1763A at 215 (3d ed. 1972); and 1 Corbin, *Corbin On Contracts* § 128 (1963).

It is the Court's opinion that in compliance with the Supreme Court's ruling in *Sanders,* and a number of other cases, the Plaintiffs/Counter-Defendants are entitled to Summary Judgment on all counts, claims and allegations pertaining to unconscionability made by the Defendants/Counter-Plaintiffs, Calvin and Elsie Quarles in their Counter-Complaint as a matter of law.

## 12.  INCREASING COST BY ADDING UNWANTED INSURANCE:

The QUARLES presented no evidence to support this contention, and therefore the Court concludes that AGF, et al. is entitled to summary judgment as a matter of law on the allegation that AGF, et al. added unwanted credit life insurance on to the loans, thereby further increasing the amounts owed by the QUARLES in loans made by the AGF, et al., to them in 1997, 2000 and 2003.

## 13.  THE JANUARY 10, 2003 LOAN:

The QUARLES presented no evidence of any wrong doing on the part of AGF, et al. or any of their agents as pertained to the loan between the QUARLES and AMERICAN GENERAL.  In fact the only thing of significance presented by any one pertaining to this loan was in Mr. Quarles deposition when he was asked "your not making a claim in this law suit about the form of the 2003 loan, are you?" and he replied, "Well, not exactly." And "no I'm not making a claim about it."

Therefore, the Court finds as a matter of law, that the Counter-Defendants are entitled to a Summary Judgment as to all claims, averments and count pertaining to the loan made between the QUARLES and AGF, et al. on January 10, 2003.

**15. THE COURT'S FINDING, THE COUNTER-COMPLAINT:**

A.  All claims made by the QUARELES in their Counter-Complaint against AGF, et al., as pertains to the loans made in 1997 and 2000, are bared by the applicable statute of limitations and therefore the Counter-Defendants, AGF, et al. are entitled to a Summary Judgment as a matter of law;

B.  The QUARLES, have failed to present "substantial evidence," creating any genuine issues of material fact as pertains to any of the claims made in their Counter-Complaint against AGF, et al., as to any of the three (3) loans which were the subject of the QUARLES' Counter-Complaint and therefore and, AGF, et al. is entitled to a Summary Judgment as a matter of law; and,

C.  Based upon this evidence, the Court finds that the QUARLES have not shown any reasonable reliance by them on anything TILLERY said at the time they made each of the three loans of issue in this case and therefore AGF, et al. is entitled to a Summary Judgment as a matter of law.

Therefore it is **ORDERED, ADJUDGED** and **DECREED** that:

A.  The Plaintiffs/Counter-Defendants' Motion for Summary Judgment is **GRANTED** as it pertains to all issues against the Counter-Defendants, American General Finance, Inc.; American International Group, Inc; American General Corporation; and, Yosemite Insurance Company, et al., presented by the Counter-Plaintiffs, Calvin and Elsie Quarles, in their Counter-Complaint.

B.  As to all Counts and Claims by the Defendants/Counter-Plaintiffs, Calvin Quarles, Jr. and Elsie Quarles against the Plaintiffs/Counter-Defendants, American General Finance, Inc.; American International Group, Inc; American General Corporation; and, Yosemite Insurance Company, et al., in their Counter-Complaint against the Counter-Defendants **Judgment is hereby entered** in favor of Counter-Defendants, American General Finance, Inc.; American International Group, Inc; American General Corporation; and, Yosemite Insurance Company, et al. and against the Defendants/Counter-Plaintiffs, Calvin Quarles, Jr. and Elsie Quarles.

Done this 23ʳᵈ day of January, 2006.

John V. Denson, II
Circuit Judge

FILED

JAN 2 4 2006

IN OFFICE
CORINNE T. HURST
CIRCUIT CLERK

Copy to:

    David Elliott
    BURR & FORMAN, LLP
    3100 SouthTrust Tower
    420 North 20th Street
    Birmingham, AL 35203

    C. Lance Gould
    Beasley, Allen, Crow, Methvin
     Portis & Miles, P.C.
    P. O. Box 4160
    Montgomery, AL 36103-4260